# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SYLVESTER ALLEN, JR., DEJUANA BIGELOW, TABATHA DAVIS, and FUTURE ALAMANCE, on behalf of themselves and all others similarly situated,

    *Plaintiffs*,

v.

CITY OF GRAHAM, KRISTI COLE, individually and in her official capacity as Chief of the Graham Police Department, ALAMANCE COUNTY, TERRY S. JOHNSON, individually and in his official capacity as Sheriff of Alamance County, GRAHAM POLICE OFFICERS JOHN and JANE DOES #1-15, and ALAMANCE COUNTY DEPUTY SHERIFFS JOHN and JANE DOES #16-30,

    *Defendants*.

**COMPLAINT**

Case No. 1:20-cv-00997

   Plaintiffs Sylvester Allen, Jr., Dejuana Bigelow, Tabatha Davis, and Future Alamance by and through counsel, file this complaint against Defendants the City of Graham, Kristi Cole, individually and in her official capacity as Chief of the Graham Police Department, Alamance County, Terry S. Johnson, individually and in his official capacity as Alamance County Sheriff, John and Jane Does #1-15, all presently unknown officers of the Graham Police Department, and John and Jane Does #16-30, all presently unknown officers of the Alamance County Sheriff's Office.

# INTRODUCTION

The right of people to vote and to do so free from violence, retribution, or intimidation from private actors or their government is one of the most sacred guarantees of a constitutional democracy. Indeed, "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." *N. Carolina State Conf. of NAACP v. McCrory*, 831 F.3d 204, 241 (4th Cir. 2016). Yet, as courts have recognized, "[v]oter intimidation presents an ongoing threat to the participation of minority individuals in the political process[.]" *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 671 F. Supp. 2d 575, 578-79 (D.N.J. 2009), *aff'd* 673 F.3d 192 (3d Cir. 2012), *cert. denied* 133 S. Ct. 1471 (2013).

On October 31, 2020, the Graham Police Department and the Alamance County Sheriff's Office ignored these constitutional commands. Plaintiffs attempted to exercise their right to vote and assemble by participating in I Am Change, a march to the polls in Graham, North Carolina, focused on social justice and political participation. Defendants responded by firing pepper spray indiscriminately into the crowd of peaceful marchers, including children as young as three years old and individuals with disabilities, on at least two occasions during the march. As pepper spray filled the air, the protesters were forced to disperse; many suffered trouble breathing, vomiting, and other complications.

Plaintiffs participated in the march, attempting to exercise their rights to protest. For that, Graham Police Department and Alamance Sheriff's Department subjected them to unwarranted and violent levels of force. Plaintiff Sylvester Allen Jr. was pepper sprayed in his face while on stage, which caused irritation in and around his eyes and to his throat.

2

Plaintiff Dejuana Bigelow and her child were pepper sprayed while at the march, causing them to cough, have difficulty breathing, and suffer from burning in their eyes. To protect her child from the assault, Ms. Bigelow wrapped her child's head in her jacket and retreated to her car, leaving the march early. At the time of this filing, Ms. Bigelow is still suffering from irritation in her eyes due to the pepper spray. Plaintiff Tabatha Davis was pepper sprayed while at the march, and immediately experienced trouble seeing and breathing. Forced to remove her glasses and her face mask due to the irritants, Ms. Davis stumbled her way out of the march—and away from the polling site, where she had intended to vote that day. Because of the police violence, she was unable to cast her ballot. Members of Future Alamance also suffered harm from the assault.

Through their conduct, Defendants prevented North Carolinians from peacefully protesting and casting their vote free from intimidation, threats, harassments, and coercion. Defendants' conduct occurred on the last day of early voting in North Carolina and three days before the end of the 2020 general election. That Defendants would deploy weapons of war to dissuade voters so close to Election Day inspires little confidence that voters will be safe to cast their ballots. Plaintiffs bring this action to put a stop to Defendants' actions that violate federal and North Carolina law, and ensure that they may cast their ballots free from intimidation, harassment, threats, or other forms of coercion.

## PARTIES

1.      Plaintiff Dejuana Bigelow is a Black voter who resides in Graham, North Carolina. She is registered to vote in Alamance County.

Case 1:20-cv-00997-CCE-LPA   Document 1   Filed 11/02/20   Page 3 of 26

2.      Plaintiff Sylvester Allen, Jr. is a Black voter with Native American lineage who reside in Graham, North Carolina. He is registered to vote in Alamance County.

3.      Plaintiff Tabatha Davis is a white voter who resides in Mebane, North Carolina. She is registered to vote in Alamance County.

4.      Plaintiff Future Alamance is a community organization formed in July 2020 and based in Alamance County. Its members include registered voters in Alamance County. The organization's work is focused on creating an inclusive Alamance with equality for the entire community.

5.      Defendant Kristi Cole, sued individually and in her official capacity as Graham Chief of Police, is domiciled in the state, and is subject to the personal jurisdiction of this Court. In her capacity as Chief of Police for the Graham Police Department ("GPD"), Defendant Cole is responsible for implementing the policy, practice, supervision, implementation, and conduct of all GPD matters, including the appointment, training, supervision, and conduct of all GPD personnel. In addition, Defendant Cole is responsible for enforcing the rules of the GPD and ensuring that GPD personnel obey the laws of the United States and the State of North Carolina, including by conducting thorough and expeditious investigations into officer misconduct. At all relevant times, Defendant Cole was acting within the scope of her employment and under color of state law.

6.      Defendant Terry S. Johnson, sued individually and in his official capacity as the Sheriff of Alamance County, is domiciled in the state, and is subject to the personal jurisdiction of this Court. In his capacity as Sheriff of Alamance County, Defendant

Johnson is responsible for implementing the policy, practice, supervision, implementation, and conduct of all Alamance County Sheriff's Office ("ACSO") matters, including the appointment, training, supervision, and conduct of all ACSO personnel. In addition, Defendant Johnson is responsible for enforcing the rules of the ACSO and ensuring that ACSO personnel obey the laws of the United States and the State of North Carolina, including by conducting thorough and expeditious investigations into officer misconduct. At all relevant times, Defendant Johnson was acting within the scope of his employment and under color of state law.

7. Defendant City of Graham is a municipality organized and existing under the laws of the State of North Carolina. Defendant City of Graham, acting through GPD and Defendant Cole, is responsible for the policy, practice, supervision, implementation, and conduct of all GPD matters, including the appointment, training, supervision, and conduct of all GPD personnel. In addition, the City of Graham is responsible for ensuring that GPD personnel obey the laws of the United States and the State of North Carolina.

8. Defendant Alamance County is organized and existing under the laws of the State of North Carolina. Defendant Alamance County, acting through ACSO and Defendant Johnson, is responsible for the policy, practice, supervision, implementation, and conduct of all ACSO matters, including the appointment, training, supervision, and conduct of all ACSO personnel. In addition, Alamance County is responsible for ensuring that ACSO personnel obey the laws of the United States and the State of North Carolina.

9. Defendants John Does #1–15, whose true names are unknown to Plaintiffs

and could not be discovered by Plaintiffs as of the date of the filing of this action, are all officers, agents, and/or employees of the Graham Police Department.

10.     Defendants John Does #16–30, whose true names are unknown to Plaintiffs and could not be discovered by Plaintiffs as of the date of the filing of this action, are all officers, agents, and/or employees of the Alamance County Sheriff's Office.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1985(3), as well as under 52 U.S.C. § 10307(b).

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under federal law, and under 28 U.S.C. § 1343 because this action requests relief under statutes protecting the right to vote and civil rights.

13.     This Court has personal jurisdiction over Defendants as residents of North Carolina.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

15.     This Court has the authority to provide the declaratory relief requested, and any further relief that may be appropriate, pursuant to 28 U.S.C. §§ 2201 and 2202.

6

## STATEMENT OF FACTS

**A.**   **Alamance County and Its Police Forces Have a History of Discrimination and Interference with Political Participation by Black Citizens.**

16.   Plaintiffs' experiences are only the latest in Alamance County's long—and violent—history of denying Black citizens access to political and social life.

17.   In 1870, the Ku Klux Klan lynched Wyatt Outlaw, the first Black person elected to serve in the municipal government of Graham. Mr. Outlaw was dragged from his home and hanged from a tree in the courthouse square. Another Black man who witnessed the lynching was found dead, drowned in a nearby pond.

18.   In 1914, Graham erected the Alamance County Confederate Monument to celebrate the soldiers who served in the Confederate Army at the site of the lynching of Mr. Outlaw. On one side, the monument reads: "CONQUERED THEY CAN NEVER BE, WHOSE SPIRITS AND SOULS ARE FREE." It remains standing to this day. Upon information and belief, Defendants have in recent years devoted resources to ensuring that the monument is protected, such as by deploying law enforcement to the monument—including when protesters against police violence against Black communities have demanded the monument's removal.

19.   Upon information and belief, neo-confederate groups, such as Alamance County Taking Back Alamance County ("ACTBAC"), have recently taken root in the county, and have taken to armed demonstration to defend the monument.

20.   Alamance County's policing systems are not immune from this history.

7

21.     In 2010, the United States Department of Justice ("DOJ") opened an investigation into the ACSO for racially discriminatory policing. DOJ determined in 2012 that ACSO engaged in a pattern of racially discriminatory policing that was "deeply rooted in a culture that begins with Sheriff [Terry] Johnson and permeates the entire agency."[1]

22.     Earlier this year, as protesters across the country took to the streets to demand police accountability and racial justice in the wake of the high-profile killing of George Floyd, the Graham Police Department posted a message criticizing the purported "hypocrisy" of the Black Lives Matter movement on its official Facebook pace.

23.     ACSO also a pattern of engaging in discriminatory policing for the purpose of suppressing minority votes—often by engaging in racial profiling.

24.     Upon information and belief, in 2004, Defendant Johnson directed ACSO deputies to visit the homes of approximately 100 newly registered Hispanic voters in the county, claiming without basis that he was concerned about voter fraud.

25.     Upon information and belief, in 2017, ACSO arrested and charged 12 Alamance County residents—nine of whom were Black—with illegally voting in the 2016 general election. That year, Alamance County led the State in voter fraud prosecutions.

26.     Protestors who participated in the October 31 march, further described below, intended to call attention to discriminatory policing and police violence, to vote for change, and to encourage others to do so.

---

[1] Letter from United States Dep't of Justice to Alamance County 2 (Sept. 18, 2020), *available online at* https://www.justice.gov/iso/opa/resources/171201291812462488198.pdf.

**B.** **The Right to Vote Is Protected by Law.**

**1.** **Federal Law Bars Intimidation at the Polls.**

27. The right to vote includes the right to be free from physical violence or threats of physical violence in the exercise of the franchise. *See, e.g.*, *Paynes v. Lee*, 377 F.2d 61, 64 (5th Cir. 1967) ("The protected right [to vote] includes the right to be free from bodily injury in the exercise of the right of franchise.") (citing *Ex Parte Yarbrough*, 110 U.S. 651, 662 (1884)); *Katzenbach v. Original Knights of Ku Klux Klan*, 250 F. Supp. 330, 334 (E.D. La. 1965) (pattern of acts and threats of physical violence constituted intimidation of voter's attempt to exercise their civil rights).

28. The Civil Rights Act of 1871, 42 U.S.C. § 1985(3), provides for damages and equitable relief "if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of . . . an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy." 42 U.S.C. § 1985(3).

29. Section 1985(3) provides that an action will lie against the conspirators so long as "one or more persons engaged" in the conspiracy "do, or cause to be done, any act in furtherance of the object of such conspiracy." *Id.* Even as to those persons who do not directly participate in those activities, Section 1985(3) makes it unlawful to conspire with others to promote, organize, and otherwise facilitate those efforts.

30. The Voting Rights Act protects against intimidation in both elections and

registration efforts. Section 11(b) of the Voting Rights Act prohibits actual or attempted "intimidation," "threats," or "coercion" against a person, either "for voting or attempting to vote" or "for urging or aiding any person to vote or attempt to vote." 52 U.S.C. § 10307(b).

### C. Defendants' Unlawful Actions Intimidated, Threatened and Physically Harmed Voters, Including Plaintiffs.

#### i. Defendants' Intimidating Conduct

31.     On October 31, 2020, Sylvester Allen, Jr., Dejuana Bigelow, Tabatha Davisand members of Future Alamance marched to the Elm Street polling place as part of the I Am Change, Legacy March to the Polls (the "March").

32.     The March was intended to encourage "people to go to the polls and vote for change."[2] It began at Wayman's Chapel AME Church and was scheduled to stop at Court Square, near the Confederate monument, where participants would join in a rally encouraging people to vote. March organizers planned for the March to ultimately culminate near Elm Street polling place, where some participants would vote in the 2020 general election.

33.     The March was also intended to rally people in support of the Black Lives Matter movement, which protests police violence against Black communities.

34.     Particularly given the long history of racially discriminatory policing in

---

[2] The Times News, *Local Activists to Hold Halloween March in Graham* (Oct. 14, 2020), https://www.thetimesnews.com/story/news/2020/10/14/activist-announces-i-am-change-march-wednesday-press-conference/3658546001/.

Alamance County, the March was meant to serve as a moment of political power for Black communities.

35. Protestors gathered together at the church at approximately 11:00 A.M., then walked from the church to Court Square.

36. Police officers accompanied them on the March. All protestors remained orderly and calm during the March. There were no arguments between protestors and police officers.

37. When March attendees arrived at Court Square, they kneeled in a moment of silence for 8 minutes and 46 seconds in remembrance of George Floyd, representing the amount of time Minneapolis police officer Derek Chauvin pressed his knee on Mr. Floyd's neck, suffocating him to death.

38. Immediately after the remembrance, police officers ordered the nearly 200 protestors out of the streets. Some of the protestors were unable to hear the officer's commands.

39. Protestors began to move out of the street, but because the area was crowded, they were not able to immediately exit.

40. Several protesters, including Ms. Bigelow and Mr. Allen, observed officers on the scene communicating with each other.

41. Upon information and belief, the GPD police officers and ACSO deputies, including Defendants John and Jane Does #1-30, were communicating with each other to coordinate a plan for dispersing the crowd.

11

42.     Upon information and belief, less than one minute after ordering protestors to clear the street, Defendants indiscriminately discharged pepper spray against the protestors, including children as young as three years old, elderly individuals, and those with disabilities.

43.     Pursuant to the Alamance County Sheriff's Office Policy & Procedure Manual promulgated by Defendant Johnson, any use of a chemical agent must be promptly reported to senior officials with the Sheriff's Office, including Defendant Johnson.

44.     After receiving notice that a chemical agent was used, Defendant Johnson must develop an "operational plan" for continued response to the situation.

45.     Upon information and belief, Defendant Johnson received notice after the first time pepper spray was used on peaceful protesters.

46.     Upon information and belief, the operational plan Defendant Johnson developed after learning of the first use of pepper spray authorized deputies, including Defendant Officers John Does #16-30, to use pepper spray again.

47.     The protesters were able to move out of the roadway and onto the public square by the Confederate Monument. Some protesters gathered in the park area, and some gathered on the sidewalk across from the park.

48.     Organizers for the March began speaking at a stage that was set up on the sidewalk, using speakers that were plugged into a generator for which the organizers had received a permit. Ms. Davis found a spot near the stage and Mr. Allen was on the stage.

49.     Upon information and belief, while the March organizers were speaking to

protesters, GPD and ACSO officers—including Defendants John and Jane Does #1-30—communicated with each other and decided to use pepper spray again.

50. After approximately 30 minutes, ACSO deputies came to the stage and attempted to unplug the generator to end the rally without explanation.

51. Less than a minute later, ACSO deputies began to unleash pepper spray at the March attendees without explanation or warning.

52. The pepper spray began to blanket the area, forcing march attendees who had planned on voting at the polling place about a block away—including Ms. Davis—away from the area. Ms. Davis fled to protect herself.

53. Because the pepper spray began to immediately irritate her eyes and throat, Ms. Davis was forced to remove her eyeglasses and the face mask she was wearing to protect herself from COVID-19 infection.

54. Many others, including children, elderly persons, and handicapped members of the crowd, also were forced to remove their protective face masks and leave the area because of the pepper spray. In the resulting chaos, Ms. Davis, lost her glasses. Because so many people were no longer wearing masks, she feared exposure to COVID-19.

55. Ms. Davis was unable to cast her vote on October 31, 2020, because of the violence she suffered. Upon information and belief, other participants in the March were also unable to cast their votes on October 31, 2020, as a result of the police violence.

56. This event occurred on the last day of early voting, and the only remaining opportunity for in-person voting is tomorrow, November 3, 2020. There is a significant

13

risk that Defendants' harassment will prevent North Carolina voters from casting a ballot in the 2020 election.

57.     Further, discharging pepper spray against individuals celebrating the right to vote and marching to a polling place intimidates North Carolina voters, particularly Black voters, and is likely to deter individuals from voting. Defendants sent a clear message targeting Black voters and others who speak out against police violence targeting Black people, such as Ms. Davis and other members of Future Alamance, that they may face pepper spray or other attacks when they vote or engage in peaceful assemblies.

58.     Indeed, marchers who have just been brutalized may not want to return to the area to vote on Election Day.

59.     Discharging pepper spray at peaceful protestors marching to a polling place constitutes an attempt to intimidate, threaten, or coerce voters in a manner that prevents them from exercising their constitutional right to vote.

60.     Upon information and belief, Defendants' use of pepper spray on March attendees was motivated at least in part by the race of March attendees—the majority of whom were Black, and all of whom were marching in support of the Black community.

61.     At a subsequent press conference regarding the incident, a GPD spokesperson—speaking on behalf of Defendant Cole—defended GPD officers' conduct, including that of Defendants John and Jane Does #1-15. The GPD spokesperson blamed March attendees and organizers for the violence.

62.     Upon information and belief, neither Defendant Cole, Defendant Johnson,

nor any other senior official within GPD or ACSO has taken any steps to investigate or discipline any officer in connection with the use of pepper spray on peaceful voters on October 31, 2020.

### ii. Effect of Intimidation on Plaintiffs

63.     Upon information and belief, at least four voters were prevented from voting in the general election on October 31 because of the Defendants' conduct. This includes Ms. Davis and another Future Alamance member.

64.     Mr. Allen participated in the I Am Change march. Mr. Allen is a resident of Alamance County and had already voted in the 2020 election. Mr. Allen participated in the 8 minute and 46 second moment memorial for George Floyd. Within seconds of the memorial ending, Mr. Allen heard and saw law enforcement pepper spraying march participants. Mr. Allen was indirectly hit by the pepper spray. Later, Mr. Allen was on the stage set up for the march's speakers. He saw police trying to take the generator that was powering the sound equipment for the march. Within moments, law enforcement surrounded the stage and began to pepper spray people. Law enforcement pepper sprayed Mr. Allen in the face. The pepper spray caused a burning sensation in and around Mr. Allen's eyes that continued for 20 minutes, and in his throat. At the time of this filing, Mr. Allen continues to have irritation in his throat.

65.     Plaintiff Dejuana Bigelow participated in the I Am Change march. Ms. Bigelow is a resident of Alamance County and had already voted in the 2020 election. She brought her three-year-old daughter to Court Square to join the peaceful protest. About

15

fifteen seconds after the memorial to George Floyd ended, she heard Graham police officers begin to say "Time is up. Everybody move. Move. Move. Move." No more than 20 seconds later, she began to see that officers were discharging pepper spray into the crowd. The pepper spray hit herself and her daughter; they both began coughing. It was difficult for them to breath and Ms. Bigelow's eyes were burning. She took her daughter's jacket off and used it to cover her daughter's face. She looked up and saw white smoke from the police conduct and fled to her car with her daughter. At the time of this complaint, Ms. Bigelow's eyes are still irritated. Studies have found that individuals exposed to pepper spray can continue to experience significant adverse health consequences up to one month after exposure.[3]

66.     Plaintiff Ms. Davis participated in the I Am Change march. She had planned to vote at the Elm Street polling site to which the March was headed. Once the March arrived at Court Square, Ms. Davis participated in the memorial protest in honor of George Floyd, kneeling for 8 minutes and 46 seconds. Almost immediately afterwards, Ms. Davis heard officers instruct the marchers to leave. Just seconds later, she saw officers discharge pepper spray into the crowd and soon began to feel the effect of the spray.

67.     Ms. Davis, who has asthma, began coughing and had to remove her glasses because the chemical was getting in her eyes. She also had to remove the face mask that she wore to protect herself from COVID-19. She saw that others in the area had to do the

---

[3] Y.G. Karagama, J.R. Newton, and C.J.R. Newbegin. "Short-term and long-term physical effects of exposure to CS spray." Journal of The Royal Society of Medicine. J.R. Soc. Med. April 2003. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC539444/.

same, exposing them to a heightened risk of contracting the disease. She fled the square, losing her glasses in the process, and was unable to make it back to the polling station before it closed at 3:00 p.m. When she returned home, she could still smell the pepper spray on her clothing.

68.     Defendants' intimidating and violent conduct prevented Ms. Davis from voting at Elm Street on October 31. She plans to vote on November 3, but she is worried that she will face crowded polls and longer lines and fears she may face similar types of intimidation when she goes to cast her vote.

69.     Future Alamance organized for its members to participate in the March to the polls. At least two members, including Ms. Davis, intended to vote and were prevented from voting because of Defendants' conduct.

### iii. Excessive Use of Force in Deployment Pepper Spray During March

70.     The Defendants discharged pepper spray on protestors on at least two occasions on October 31 which caused Plaintiffs physical harm. Oleoresin capsicum, also known as pepper spray, is far from a trivial inconvenience to those exposed; rather, it poses serious risks of injury—even death.

71.     As the United States Court of Appeals for the Fourth Circuit has recognized, "[t]he effects of OC spray include (1) dilation of the capillaries and instant closing of the eyes through swelling of the eyelids, (2) immediate respiratory inflammation, including uncontrollable coughing, retching, shortness of breath and gasping for air with a gagging

sensation in the throat, and (3) immediate burning sensations to the mucous membranes, skin and inside the nose and mouth." *Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001).

72.    The use of pepper spray during the ongoing Novel Coronavirus – 2019 ("COVID-19") pandemic creates additional risks for those exposed. COVID-19 is spread through respiratory droplets, which are spread by coughing, sneezing, and talking.[4] In addition to burning of the eyes, nose, and mouth, exposure to pepper spray can cause increased nasal secretions, immediate coughing, and sneezing.

73.    Defendants deployed pepper spray through aerosol guns, causing the gas to spread over entire areas. When used in such a manner, pepper spray cannot be targeted at specific people or even in a discrete direction. It inherently injures everyone exposed to it.

74.    Because pepper spray creates respiratory problems, many marchers exposed to pepper spray at the event could not keep on their masks worn to prevent the spread of COVID-19. This includes Ms. Davis who had to remove her mask and glasses after being sprayed with pepper spray.

75.    When large groups of people congregate, remove their masks, and cough or sneeze, the risk of becoming infected with COVID-19 increases.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
52 U.S.C. § 10307 – Voter Intimidation

76.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully

---

[4]    Cornoavirus Disease 2019 (COVID-19) Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread.

set forth in this claim.

77.     Defendants, including more than a dozen law enforcement officers from both the Graham Police Department and the Alamance County Sheriff's Office, overstepped the bounds for proper conduct of a law enforcement officer by unlawfully discharging pepper spray against plaintiffs and other peaceful protestors.

78.     Defendants' unlawful discharging of pepper spray intimidated, threatened or coerced, and/or attempted to intimidate, threaten, or coerce constitutionally eligible voters by directly interfering with march attendees who planned to vote after the march, including members of Future Alamance.

79.     Defendants' actions, by disrupting a peaceful celebration of the right vote, also sent a clear message of intimidation to all those who wish to celebrate or exercise their right to vote.

80.     Members of Future Alamance, including Ms. Davis, were prevented from voting on October 31 because of Defendants' illegal actions. Ms. Davis is fearful of attempting to vote on Election Day and is concerned she may be unable to vote.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – First Amendment Retaliation

81.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

82.     Plaintiffs engaged in constitutionally protected speech and assembly by participating in a peaceful march to a polling site for the purposes of voting.

19

83.     Defendants John and Jane Does #1-30 engaged in use of pepper spray, causing injuries to Plaintiffs.

84.     Defendant Cole approved of and ratified the conduct of Defendants John and Jane Does #1-15 and other Graham police officers who used pepper spray on Plaintiffs.

85.     Defendant Johnson approved of and ratified the conduct of Defendants John and Jane Does #16-30 and other Alamance County deputy sheriffs who used pepper spray on Plaintiffs.

86.     Defendant Johnson is a final policymaker within Alamance County for all matters related to the Alamance County Sheriff's Office. His decisions regarding the Alamance County Sheriff's Office, including all deputies thereof, constitute the official policies of Defendant Alamance County.

87.     Defendant Cole is a final policymaker within the City of Graham for all matters related to the Graham Police Department. Her decisions regarding the Graham Police Department, including all officers thereof, constitute the official policies of Defendant City of Graham.

88.     Defendants' conduct would likely deter a person of ordinary firmness from participating in further marches for fear of being subject to similar force, and did in fact actually deter Plaintiffs from participating in further demonstrations.

89.     Defendants have not used, or authorized use of, pepper spray on protesters who were demonstrating in support of maintaining Confederate monuments, even when those protesters demonstrated in the same area of Graham as Plaintiffs.

90. Defendants engaged in their use of pepper spray just minutes after Plaintiffs and other peaceful marchers kneeled to commemorate George Floyd, a Black man who was killed by police officers.

91. Defendants' conduct was motivated at least in part by the subject matter of Plaintiffs' march—protesting police violence.

92. As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained the injuries detailed above.

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth Amendment/Excessive Force

93. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

94. At all relevant times, Defendants have acted—and continue to act—under color of state law.

95. At all relevant times, Plaintiffs were peacefully marching to a poll site and did not disobey or refuse any police order.

96. At no point did Plaintiffs pose any risk of injury or harm to themselves, other people, or property.

97. Defendants John and Jane Does #1-30 nonetheless repeatedly used pepper spray on Plaintiffs.

98. By using pepper spray on Plaintiffs without justification, Defendant Officers subjected Plaintiffs to excessive force.

21

99. Defendant Cole has, through her spokesperson, defended GPD's conduct, including the conduct of Defendant Officers John and Jane Does #1-15, and has blamed voters for the violence.

100. Defendant Cole has failed to investigate or discipline any GPD officers, including Defendants Officers John Does #1-15, for using pepper spray on peaceful voters.

101. Defendant Cole approved of and ratified the conduct of Defendant Officers John Does #1-15 and other Graham police officers who used pepper spray on Plaintiffs.

102. Upon information and belief, Defendant Johnson received notice after the first time pepper spray was used on peaceful protesters.

103. Upon information and belief, the operational plan Defendant Johnson developed after learning of the first use of pepper spray authorized deputies, including Defendant Officers John Does #16-30, to use pepper spray again.

104. Defendant Johnson has failed to investigate or discipline any ACSO deputies, including Defendants Officers John Does #16-30, for using pepper spray on peaceful voters.

105. Defendant Johnson approved of and ratified the conduct of Defendant Officers John Does #16-30 and other Alamance County deputy sheriffs who used pepper spray on Plaintiffs.

106. Defendant Johnson is a final policymaker within Alamance County for all matters related to the Alamance County Sheriff's Office. His decisions regarding the

Alamance County Sheriff's Office, including all deputies thereof, constitute the official policies of Defendant Alamance County.

107.    Defendant Cole is a final policymaker within the City of Graham for all matters related to the Graham Police Department. Her decisions regarding the Graham Police Department, including all officers thereof, constitute the official policies of Defendant City of Graham.

108.    As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained the injuries detailed above.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1985(3) – Conspiracy to Deprive Civil Rights

109.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth in this claim.

110.    Defendants conspired to prevent eligible voters, by force, intimidation, and threat, from exercising their right to vote. GPD and ACSO officers, including Defendants John and Jane Does #1-30, communicated with each other to form a joint strategy to disperse March attendees from the street and the stage.

111.    Defendants decided to engage in the use of pepper spray as detailed above at least in part due to the race of the March attendees, the majority of whom were Black.

112.    Upon information and belief, Defendants have not used, or authorized use of, pepper spray on protesters, the vast majority of whom are white, who were demonstrating in support of maintaining Confederate monuments even when those protesters demonstrated in the same area of Graham as Plaintiffs.

23

113.    Defendants violated 42 U.S.C. § 1985(3) by knowingly conspiring with each other to forcefully interrupt a peaceful protest by unlawfully discharging pepper spray.

114.    Defendants violated 42 U.S.C. § 1985(3) by conspiring to prevent by force, intimidation, or threat, citizens from exercising their constitutional right to vote.

115.    Defendants' unlawful discharging of pepper spray on two separate occasions approximately one-hour apart constituted substantial steps in furtherance of the conspiracy.

116.    Defendants knew or should have known that at the time of their unlawful discharging of pepper spray that such acts would prevent or deter constitutionally eligible voters from exercising their right to vote in upcoming elections.

117.    After Defendants deployed tear gas after the remembrance of George Floyd a number of marchers were injured and forced to leave. Defendant knew discharging pepper spray a second time would have the same consequence of forcing marchers to flee the area and prevent them from exercising their constitutional rights.

118.    Defendants' conduct intimidated or attempted to intimidate voters and prevented Plaintiffs form voting.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

a.  Declare that Defendants' intimidating conduct—including discharging pepper spray at peaceful protestors on their way to vote is contrary to law;

b.  Declare that the harassment or intimidation of voters at or outside of the polls or on their way to the polls during the 2020 Election—is contrary to law;

c. Award damages against individuals who were injured during the March;

d. Award attorney's fees and costs associated with this litigation; and

e. Grant such other relief as this Court may deem proper.

Dated: November 2, 2020

                                        Respectfully submitted,


/s/ Geraldine Sumter                    Leah Aden*
Geraldine Sumter (NC Bar No. 11107)     Natasha Merle*
Ferguson Chambers & Sumter, P.A.        Ashok Chandran*
309 East Morehead St., Suite 110,       NAACP LEGAL DEFENSE
Charlotte, NC 28202                     AND EDUCATION FUND, INC.
704-375-8461                            40 Rector Street, 5th Floor
GSumter@fergusonsumter.com              New York, NY 10006
                                        212-965-2200
C. William Phillips*                    laden@naacpldf.org
COVINGTON & BURLING LLP                 nmerle@naacpldf.org
620 Eighth Avenue                       achandran@naacpldf.org
New York, NY 10018-1405
212-841-1081                            Morgan Lewis*
cphillips@cov.com                       COVINGTON & BURLING LLP
                                        415 Mission Street
Marianne Spencer*                       San Francisco, CA 94105-2533
COVINGTON & BURLING LLP                 415-591-7098
850 Tenth Street, N.W.                  mlewis@cov.com
Washington, DC 20001
202-662-5745
mspencer@cov.com


                                *Attorneys for Plaintiffs*


* Application for appearance pursuant to Local Rule 83.1(d) forthcoming


25

## CERTIFICATE OF SERVICE

I, Geraldine Sumter, hereby certify that on the 2nd day of November, 2020, a true and correct copy of the foregoing was filed on the Court's CM/ECF filing system. An additional copy was mailed to the following defendants, via certified mail with return receipt:

City of Graham
Graham City Attorney's Office
201 South Main Street
Graham, NC 27253

Chief Kristi Cole
Graham Police Department
216 S. Maple St.
Graham, NC 27253

Sheriff Terry S. Johnson
Alamance County Sheriff's Office
109 S. Maple St.
Graham NC 27253

Alamance County
Alamance County Attorney's Office
124 W. Elm St.
Graham, NC 27253.

*/s/ Geraldine Sumter*

Geraldine Sumter

26