IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No.: 1:20-cv-00997

SYLVESTER ALLEN, JR. *et al.*,               )
                                             )
                    *Plaintiffs*,            )
                                             )
            v.                               )
                                             )
CITY OF GRAHAM, *et al.*,                    )     **DEFENDANTS ALAMANCE**
                                             )     **COUNTY AND TERRY S.**
                    *Defendants*.            )     **JOHNSON'S MEMORANDUM OF**
                                             )     **LAW IN SUPPORT OF THEIR**
_____             )     **MOTION FOR JUDGMENT ON THE**
                                             )     **PLEADINGS**
GREGORY DRUMWRIGHT, et al.,                  )
                                             )     (***ALLEN V. ALAMANCE COUNTY***
                    *Plaintiffs*,            )     ***1:20-CV-00997***)
                                             )
            v.                               )
                                             )
TERRY JOHNSON, individually and             )
in his official capacity as Alamance        )
County Sheriff, *et al.*,                    )
                                             )
                    *Defendants*.            )
_____

NOW COME Defendants, Alamance County and Terry S. Johnson, individually and in his official capacity as Alamance County Sheriff (hereinafter "Defendants"), by and through undersigned counsel, and pursuant to Rules 12(b) and (c) of the Federal Rules of Civil Procedure and local Civil Rule 7.2, hereby files this Memorandum of Law in Support of its Motion to Dismiss.

1

## STATEMENT OF THE CASE

Plaintiffs filed their initial Complaint in this action, *Allen et al v. City of Graham et al.* 1:20-cv-00997 in the Middle District of North Carolina on November 2, 2020. [DE 1] On December 4, 2020 this Honorable Court granted the Consent Motion to Consolidate this matter with *Gregory Drumwright et.al, v. Terry Johnson et.al,* 1:20-cv-00998 for all pre-trial proceedings. [DE 19]   With Defendants consent, Plaintiff's filed their First Amended Complaint [DE 24] on December 11, 2020.  On January 22, 2021, these Defendants filed their Motion for Leave from the Court for Extension of Time to File Untimely Answer to Plaintiff's First Amended Complaint. [DE 40].  On January 25, 2021, this Honorable Court granted Defendants' Motion [DE 41] extending the time within which to file a responsive pleading up to and including February 12, 2021. These Defendants filed their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint [DE 42] on February 12, 2121.

Plaintiff's First Amended Complaint [DE 24] alleges six causes of action; 52 U.S.C. §10307 Voter Intimidation [*Id* ¶¶137-146], 42 U.S.C. §1983 First Amendment Retaliation [*Id* ¶¶147-162], 42 U.S.C. §1983 Fourth Amendment /Excessive Force [*Id* ¶¶ 163-180], 42 U.S.C. 1985(3) Conspiracy to Deprive Civil Rights [*Id* ¶¶ 181-194], Assault and Battery [*Id* ¶¶195-200] and N.C. Const. Art I, Sec. 12 & 14 – Freedom of Speech and Freedom of Assembly claims [*Id* ¶¶201-209].

## STATEMENT OF ALLEGED FACTS

On October 31, 2020, Plaintiffs Sylvester Allen, Jr.; Dejuana Bigelow; Tabatha

2

Davis; Future Alamance; Olivia Davis and Talaun Woods participated in a March in downtown Graham, North Carolina. [*Id* ¶40]. Organizers intended beginning the March at Wayman's Chapel AME Church, stopping at Court Square for a rally with speeches and ultimately culminating near the Elm Street polling place. [*Id* ¶¶ 41-42]

When March participants arrived at Court Square they stopped in the street and silently paused for 8 minutes and 46 seconds. [*Id* ¶¶ 54, 56] Immediately afterward, police officers ordered nearly 200 protestors from the streets into other designated protest areas. [*Id* ¶ 56] After this order, officers discharged pepper spray against protestors remaining in the street. [*Id* ¶ 62] The protestors moved from the roadway onto the public square. [*Id* ¶ 68] Protestors gathered in the park area and on the sidewalk across from the park. [*id*] The March organizers continued the rally, making speeches from an erected stage. [*Id* ¶ 69] After some time, Officers attempted to unplug a generator causing a second pepper spray discharge. [*Id* ¶71-72] Officers deployed pepper spray a third time at individuals who allegedly failed to vacate the area expeditiously. [*Id* ¶75] Several March attendees were arrested and charged with protest-related criminal violations. [*Id* ¶ 89]

## **ARGUMENT**

When a defendant moves to dismiss a plaintiff's complaint after the pleadings have been submitted, "Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised 'by motion for judgment on the pleadings, or at the trial on the merits.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Fed. R. Civ. P. 12(h)(2)). This is because "[a]

motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards*, 178 F.3d at 243).

"The purpose of a Rule 12(b)(6) motion is to 'test the sufficiency of a complaint,' not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 213 (4th Cir. 2016)). In order for Plaintiff "[t]o survive a motion to dismiss, [Plaintiff] must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Id.* When ruling on a Rule 12(b)(6), the Court is to accept "all well-pleaded facts as true and [draw] all reasonable inferences in favor of the plaintiff." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 905 (2020). The Court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (quoting *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)) (internal quotations omitted).

Plaintiffs' "[b]are legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *King*, 825 F.3d at 214 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). At a minimum, "a plaintiff must 'nudge its claims across the line from conceivable to plausible' to resist dismissal." *Wag More Dogs, Ltd. Liab. Corp*, 680 F.3d at 365 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal punctuation omitted).

When a defendant challenges the subject matter jurisdiction of a plaintiff's

4

Complaint, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (internal quotations omitted).

## I. PLAINTIFF FUTURE ALAMANCE LACKS STANDING TO BRING ANY CLAIMS AGAINST THESE DEFENDANTS.

Future Alamance, "a community organization formed in July 2020" [*Id* ¶ 4] alleges its members participated in the March [*Id.* ¶ 40] and that one or more intended to vote on October 31, 2020 but were unable to do so. [*Id.* ¶¶ 84,98,111,138,140,144]   Pursuant to Rule 12(b)(6), Future Alamance lacks standing and should be dismissed as a party to this action.

### a. Plaintiffs failed to plead the statutory pre-requisites as an unincorporated association.

N.C. Gen. Stat. § 1-69.1 mandates that "[A]ny unincorporated association, organization, society, or general partnership bringing a suit in the name by which it is commonly known and called must allege that it has filed an assumed business name certificate under Article 14A of Chapter 66 of the General Statutes." "The statutory language of G.S. 1–69.1 is very clear and specific, i.e., any unincorporated association desiring to commence litigation in its commonly held name *must* allege the location of the recordation required by G.S. 66–68. *Highlands Twp. Taxpayers Ass'n v. Highlands Twp. Taxpayers Ass'n, Inc.*, 62 N.C. App. 537, 539, 303 S.E.2d 234, 236 (1983) "Strict construction of G.S. 1–69.1 requires that before an unincorporated association may gain

5

the privilege of instituting a lawsuit in its common name, first there must be recordation of the necessary information required by G.S. 66–68 and then allegation of its specific location." *Id* at 539

Plaintiff's Complaint reveals Future Alamance has failed to allege compliance with the mandatory prerequisites of N.C. Gen. Stat. § 1-69.1, therefore any claim brought by Future Alamance should be dismissed.

**b. Plaintiff's Complaint fails to establish that Future Alamance has direct organizational standing.**

Plaintiff failed to establish standing either directly or representationally.

"To have standing to bring a claim against a defendant, a plaintiff must demonstrate that: (1) it has suffered actual or imminent "injury in fact" which is both concrete and particularized; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)

In determining organizational standing, the Court must "conduct the same inquiry as in the case of an individual: Has the plaintiff 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"? *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S., at 261, 97 S.Ct., at 561 (emphasis omitted), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S. Ct. 1114, 1124, 71 L. Ed. 2d 214 (1982)

6

Plaintiff's Complaint lacks allegations of Future Alamance's injury in fact and lacks allegations of diversion of organizational resources to address the alleged unlawful actions, frustration of mission, or any other basis for relief.

Assuming arguendo that Plaintiffs have sufficiently pled an actual "injury in fact", which these Defendants deny, Plaintiffs fail to establish a causal connection between the alleged conduct and the alleged injury. "[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976), *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)

Plaintiff's unsupported allegations that individuals did not vote as a result of Defendant's alleged conduct is insufficient to establish a causal connection, particularly considering that the intervening misconduct of the March participants leading to their alleged inability to vote.

Finally, Plaintiff's unwarranted inferences, unreasonable conclusions, and arguments do not establish that "it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560-61. Accordingly, Plaintiffs have failed to adequately state a claim that Future Alamance has direct organizational standing and their claims should be dismissed.

**c. Plaintiff's Complaint fails to establish representational standing.**

7

Organizations like Future Alamance may establish representational standing by meeting specific criteria. "Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1977)

Plaintiff's Complaint fails to state, explicitly or implicitly, that the interests Future Alamance seeks to protect are germane to Future Alamance's alleged purpose of "creating an inclusive Alamance with equality for the entire community" [DE 24 ¶ 4]. Plaintiffs fail to otherwise demonstrate Future Alamance's purpose.

More problematic for Future Alamance's participation as a representational association is that the claims asserted and relief requested requires the participation of individual members. "(W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, *in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.*" *Id*. Citing *Warth v. Seldin*, 422 U.S. 490, at 515, 95 S.Ct., at 2213. (*emphasis added*)

8

In addition to injunctive and declaratory relief, Plaintiff's Prayer for Relief [DE 24 Prayer for Relief ¶¶ a-g] seeks damages and punitive damages without specifying or particularizing individualized harms. Following the rationale set forth in *Hunt*, the claims and relief requested by Plaintiffs requires the participation of the individual members. As Plaintiff's Complaint fails to establish Future Alamance's representational standing; the participation of individual members is necessary to establish the claims and justify the relief sought.

These Defendants respectfully submit that Plaintiffs have failed to establish Future Alamance's standing by failing to plead the elements required by N.C. Gen. Stat. §1-69.1; failing to plead direct organizational standing; and failing to plead representational standing. Therefore, Future Alamance should be dismissed as a party due to lack of standing.

## II. PLAINTIFFS CLAIMS AGAINST ALAMANCE COUNTY SHOULD BE DISMISSED.

Plaintiff's entire complaint is premised upon wrongs allegedly committed by Alamance County Sheriff Terry S. Johnson and/or unnamed Deputy Sheriffs as well as members of the Graham Police Department. Plaintiffs assert that the County is responsible for any alleged actions or omission of Sheriff Johnson or his deputies. Specifically, Plaintiffs allege "*respondeat superior*" in that "Defendant Alamance County, acting through ACSO and Defendant Johnson, is responsible for the policy, practice, supervision, and implementation of all ACSO matters, including the appointment, training, supervision, and conduct of all ACSO personnel. In addition, Alamance County is responsible for

9

ensuring that ACSO personnel obey all laws of the United States and the State of North Carolina." [DE 24¶ 13] Plaintiffs further allege that Sheriff "Johnson is the final policymaker within Alamance County for all matters related to ACSO", and his decisions regarding ACSO…constitute the official policies of defendant Alamance County". [*id* ¶¶ 154, 177] Plaintiffs further allege that "Alamance County, as the employer of defendants John and Jane Does #16-30, is responsible for their tortious conduct under the doctrine of *respondeat superior*." [*Id* ¶ 198] Plaintiffs make a common mistake by confusing the two separate legal entities and misstating the law. Thus, the complaint should be dismissed with prejudice as to defendant Alamance County.

### a. Plaintiff's Complaint fails to establish a legally cognizable claim against Alamance County.

In North Carolina, counties are created and governed by the General Assembly. N.C. Gen. Stat. §153A-11; *McCormac v. Commissioners of Robeson*, 90 N.C. 441 (1884).

"In North Carolina, the Office of Sheriff is a legal entity, established by the state constitution and state statutes, separate and distinct from the Board of County Commissioners because a sheriff is elected by the people, not employed by the county." *Little v. Smith*, 114 F. Supp. 2d 437 (W.D.N.C. 2000) (citing N.C. Gen. Stat. §162-1); *Boyd v. Robeson County*, 169 N.C.App. 460, 621 S.E. 2d. 1 (2005) (holding that North Carolina state law "characterize[s] a Sheriff's Department as a local government entity"). Under state law, it is the sheriff, not the county, that has final decision-making authority over the law enforcement policies and personnel of his office, and the sheriff's deputies "are appointed by and act for the sheriff, who alone is responsible for their conduct." *Little v.*

10

*Smith*, 114 F. Supp. 2d at 446 (quoting *Styers v. Forsyth County*, 212 N.C. 558, 194 S.E. 305 (1937)).

The law is clear in North Carolina that there is a distinct allocation of responsibilities between the Sheriff and the county with respect to actions of his deputies. The allegations of the complaint are founded solely on Plaintiffs' confrontation with deputies and others wholly separate from Alamance County, and therefore Plaintiff has no claim against Alamance County, a completely separate legal entity.

Plaintiff's Second and Third Causes of Action denominated "42 U.S.C. §1983- First Amendment Retaliation" and "42 U.S.C. §1983-Fourth Amendment Excessive Force" are equally unavailing and inadequate to state a claim against Alamance County, via *respondeat superior*, for actions of a Sheriff or his deputies. The test under federal law is whether the Sheriff and deputies were representing the official policy of the county through their actions and Plaintiff has failed to allege sufficient facts to show any liability of the county because 42 U.S.C. §1983 "does not impose liability on a municipality unless deliberate action attributable to the municipality itself is the "moving force" behind the Plaintiff's deprivation of federal rights *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). Municipal liability can arise in this instance if (1) the acts were officially sanctioned or ordered (2) by officials with final policymaking authority in that area or as determined by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112,123, 108 S.Ct. 915, 924 (1988)

11

In this case, Plaintiffs failed to allege (and indeed none exist) facts showing that Alamance County, a separate legal entity, has any responsibility for any alleged act or omission of the Sheriff or his Deputies. The complaint largely recites, in conclusory fashion, various legal terms and assumptions underlying Plaintiffs' misplaced and legally unsupported belief that Alamance County is responsible for the actions or policies of the Sheriff or his Deputies. While the complaint uses broad conclusory language implicating joint and several responsibility and liability, "the legal conclusions 'are not talismanic' because 'it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.'" *Jordan v. Alternative Resources Corp*., 458 F 3d 332 (4th Cir. 2006). The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12 (b)(6) when the facts in the complaint cannot support the legal conclusion. *Young v. City of Mount Ranier*, 238 F 3d 567 (4th Cir. 2001). The complaint simply fails to state a legally cognizable claim against Alamance County and should be dismissed.

## III. PLAINTIFF'S FIFTH CAUSE OF ACTION AGAINST DEFENDANT SHERIFF JOHNSON IN HIS OFFICIAL CAPACITY SHOULD BE DISMISSED FOR FAILURE TO NAME THE SURETY AS A PARTY TO THE SUIT.

Plaintiffs attempt to assert a state law claim, at least in part, against Sheriff Johnson in his official capacity. Because the Plaintiffs failed to name the Sheriff's surety company as a defendant, this cause of action against Sheriff Johnson in his official capacity should be dismissed. For the reasons stated below, this cause of action against Sheriff Johnson in his individual capacity should also be dismissed.

12

Governmental immunity protects the Sheriff and his deputies from official capacity suits arising from torts allegedly committed while engaged in a governmental function. *Schlossberg v. Goins*, 141 N.C. App. 436, 439, 540 S.E. 2d 49, 52 (2000). This immunity may be waived by the purchase of insurance or by purchasing a bond as required by N.C. Gen. Stat. §162-8. *White v. Cochran*, 229 N.C. App. 183, 189-90, 748 S.E. 2d 334, 339-40 (2013). N.C. Gen. Stat. §192-8 provides that the "sheriff shall furnish a bond payable to the State of North Carolina for the … the faithful execution of his office as sheriff." The amount of the bond is determined by the board of county commissioners but shall be for no more than $25,000. N.C. Gen. Stat. §162-8 This statute is a limited waiver, to the extent of the bond, of the sheriff's governmental immunity. *Messick v. Catawba County*, 110 N.C. App. 707, 715, 431 S.E. 2d 489, 494 (1993)

However, under the plain language of the statute and interpretive case law, the sheriff's immunity is waived "only where the surety is joined as a party to the action." *Summey v. Barker*, 142 N.C. App. 688, 691, 544 S.E. 2d 262, 265 (2001) (emphasis added) *See also Sellars*, 149 N.C. App. at 624, 561 S.E. 2d at 339 ("a sheriff's immunity is removed only where the surety is joined as a party to the action.") *Messick*, 110 N.C. App. at 715, 431 S.E. 2d at 494 ("The statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity, but only where the surety is joined as a party to the action.") *White*, 229 N.C. App. at 190 748 S.E. 2d at 340 ("the purchase of a bond precludes a sheriff from relying upon the protective embrace of governmental immunity…only where the surety is joined as a party to the action.")

13

"A plaintiff bringing claims against a governmental entity and its employees acting in their official capacities bears the burden of alleging and proving that the officials have waived their sovereign immunity or otherwise consented to suit. If he fails to do so, the plaintiff fails to state a cognizable claim against a governmental unit or employee." (internal citations omitted); *Messick*, 110 N.C. App. at 714, 431 S.E. 2d at 494.

There is no dispute that the Plaintiffs have failed to name Sheriff's Johnson's surety as a party to this action. Plaintiff's failure to name the surety is fatal to their Fifth Cause of Action-state law assault and battery claim against Sheriff Johnson in his official capacity and this claim should be dismissed.

## IV. PLAINTIFF'S FIFTH CAUSE OF ACTION AGAINST DEFENDANT SHERIFF JOHNSON IN HIS INDIVIDUAL CAPACITY SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Assuming *arguendo* that Plaintiffs have alleged sufficient facts to support their state law claim, which Defendants deny, Defendant Sheriff Johnson is entitled to public official immunity and the claims brought against him in his individual capacity should be dismissed.

North Carolina courts have held that "public officers and public employees are generally afforded different protections under the law when sued in their individual capacities." *Schmidt v. Breeden,* 134 N.C. App. 248, 258, 517 S.E.2d 171,177–78. (1999) "An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power." *State v. Hord,* 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965). Plaintiff's

14

Complaint alleges that Defendant Sheriff Johnson is sued "individually and in his official capacity as Sheriff of Alamance County [DE 24, ¶ 10] and "[A]t all relevant times, Defendant Johnson was acting within the scope of his employment and under the color of state law". [*Id*, ¶ 11]. The position held by Sheriff Johnson and the duties he executed were created by statute and involve the exercise of sovereign power. Clearly, at all times relevant to this action Defendant Terry Johnson was a public officer.

A public officer is shielded from liability unless sufficient facts are alleged he engaged in discretionary actions which were: (1) corrupt, *Wiggins v. City of Monroe,* 73 N.C.App. 44, 49, 326 S.E.2d 39, 43 (1985); (2) malicious, *id.;* (3) outside of and beyond the scope of his duties, *id.;* (4) in bad faith, *Hare v. Butler,* 99 N.C.App. 693, 700, 394 S.E.2d 231, 236; or (5) willful and deliberate, *Harwood v. Johnson,* 92 N.C.App. 306, 310, 374 S.E.2d 401, 404 (1988). *Reid v. Roberts,* 112 N.C.App. 222, 224, 435 S.E.2d 116, 119, *disc. review denied,* 335 N.C. 559, 439 S.E.2d 151 (1993). (*As cited in Schmidt v. Breeden*, 134 N.C. App. 248, 258, 517 S.E.2d 171, 178 (1999)

Plaintiffs have not alleged, and cannot allege, any facts showing malicious or corrupt conduct by Sheriff Johnson; or that he acted in bad faith; or was willful and deliberate. "An act is done wilfully when it is done purposely and deliberately in violation of law (State v. Whitener, 93 N.C. 590; State v. Lumber Co., 153 N.C. 610, 69 S.E. 58), or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. McKinney v. Patterson, (174 N.C. 483, 9 S.E. 967)" *Siders v. Gibbs*, 39 N.C. App. 183, 186, 249 S.E.2d 858, 860 (1978)

To the contrary, taking the allegations in Plaintiff's Complaint involving Sheriff Johnson as true, Plaintiff has alleged nothing more than generalized unspecific and wholly unsupported allegations based on conjecture and speculation. Nowhere in the Complaint is it alleged that Sheriff Johnson was even in Alamance County, let alone at the incident, on October 31, 2020.

"[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). Here, there are no supporting facts.

Thus, for the reasons set forth above, Defendant Johnson is entitled to public official immunity and moves this Honorable Court to dismiss all claims brought against him in his individual capacity.

## V. PLAINTIFF'S STATE CONSTITUTIONAL CLAIM DENOMINATED AS PLAINTIFF'S SIXTH CAUSE OF ACTION FAILS PURSUANT TO RULE 12(B)(6) GIVEN THE EXISTENCE OF AN ADEQUATE STATE LAW REMEDY.

Defendants move, pursuant to F. R. Civ. P. Rule 12(b)(6), to dismiss Plaintiff's Sixth Cause of Action in that Plaintiff's Complaint fails to state a claim upon which relief can be granted under the North Carolina Constitution. Specifically, Plaintiff's Complaint fails to establish that there is no other adequate remedy in state law available.

First, it is obvious that Plaintiff has adequate remedies at state law. Generally, a Plaintiff may bring a direct claim under the North Carolina Constitution only if no other adequate state law remedy exists. *Corum v. Univ. of North Carolina*, 330 N.C. 761, 782,

16

413 S.E. 2d 276, 289 (1992). Thus, to assert a direct constitutional claim, "a plaintiff must allege that no adequate state remedy exists to provide relief from the injury." *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E. 2d 426, 428 (2010). Under applicable North Carolina law, "an adequate remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the same injury alleged in the direct constitutional claim." *Estate of Fennell ex rel. Fennell v. Stephenson*, 137 N.C. App. 430, 436, 528 S.E. 2d 911, 915-16 (2000*), reversed in part on other grounds*, 354 N.C. 327, 554 S.E. 2d 629 (2001). Moreover, an adequate remedy is one that "provide[s] the possibility of relief under the circumstances." *Craig ex rel. Craig v. New Hanover Cty. Bd. Of Educ.*, 363 N.C. 334, 340, 678 S.E. 2d 351, 355 (2009). Thus "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id*

In their complaint, Plaintiffs assert five claims in addition to their North Carolina Constitutional claim. These claims include other constitutional claims as well as a North Carolina common law claim of assault and battery, enumerated as Plaintiff's Fifth Cause of Action. This remedy, if successful, would compensate plaintiff. Additionally, plaintiff has clear access to the courthouse with this aforementioned claim.

It is undeniable that Plaintiff's Complaint alleges additional causes of action, which establish that adequate state remedies provide relief from the alleged injury. As such, Defendants submit that Plaintiff's North Carolina Constitution claim fails, and move this Honorable Court to dismiss Plaintiff's Sixth Claim for Relief accordingly.

17

**VI. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE FIRST CAUSE OF ACTION, 52 U.S.C. § 10307-VOTER INTIMIDATION, SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).**

In order for a plaintiff to succeed on a claim brought pursuant to 52 U.S.C. §10307(b) a plaintiff must show both an act or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate. *See Olagues v. Russoniello,* 770 F.2d 791, 804 (9th Cir.1985) (noting that even assuming that plaintiffs' evidence showed that voters were intimidated when officials searched voting records, plaintiffs could not succeed for failure to show that the officials intended to intimidate) (citing *United States v. McLeod,* 385 F.2d 734, 740–41 (5th Cir.1967)). *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016)

Defendants first assert that Plaintiffs have not, and cannot establish that the alleged acts of the Defendants were acts of intimidation or attempts to intimidate, or any other acts proscribed in 52 U.S.C. 10307(b).  Other than Plaintiff's speculation and conjecture, there is no causal link between the alleged conduct and the claimed or perceived harms alleged by the Plaintiffs.

Second, Plaintiff's cannot show that the Defendants intended to interfere with Plaintiff's right to vote.  Plaintiffs attempt to establish the Defendants intent by alleging that "...officers on the scene were communicating with each other" [DE 24 ¶59]; "…were communicating with each other to coordinate a plan for dispersing the crowd"[*Id* ¶60]; "…communicated with each other to form a joint strategy to disperse…" [*Id* ¶183] Admittedly, the officers were likely communicating, but to suggest that they were plotting

18

or expressing intentions to interfere with Plaintiff's voting rights is wholly unsupported and speculative.

Defendants recognize that Plaintiff's will likely argue that 52 U.S.C. 10307(b) contains no specific language requiring a showing of specific intent and issue that is unsettled and has not been addressed by the Fourth Circuit. Defendants respectfully request this Court to apply a subjective standard, and require some factually supported allegation that Defendants subjectively intended the conduct as a threat or intimidation, which Plaintiffs have failed to do.

## VII. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE SECOND CAUSE OF ACTION, 42 U.S.C. § 1983-FIRST AMENDMENT RETALIATION, SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Ibid.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259, 126 S.Ct. 1695. It is not enough to show that an official

19

acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.,* at 260, 126 S.Ct. 1695 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway"). *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)

Defendants submit that Plaintiffs have failed to allege sufficient facts that Defendants acts were motivated by Plaintiffs protesting police violence. This Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 905 (2020). (quoting *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)) (internal quotations omitted). For these reasons Plaintiff's Third Cause of Action fails and should be dismissed.

## VIII. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE THIRD CAUSE OF ACTION, 42 U.S.C. § 1983-FOURTH AMENDMENT/EXCESSIVE FORCE, SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).

A use of force is judged by the "objective reasonableness" standard, taking into account the "totality of the circumstances" from the perspective of a reasonable officer on the scene. Graham v. Conner, 490 U.S. 386, 399 (1989). This inquiry depends on the conditions that exist at the moment force is used, recognizing that officers are forced to make split-second judgments in circumstances that are "tense, uncertain, and rapidly

evolving." Id. At 396-97. "[R]easonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight". Abney v. Coe, 493 F. 3d 412, 415 (4th Cir. 2007) Indeed, [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Saucier v. Katz, 533 U.S. 194, 209 (2001), *rev'd on other grounds*, 555 U.S. 223 (2009)

Defendants respectfully request that the Court find that Plaintiffs have failed state a claim upon which relief may be made and dismiss Plaintiff's Third Cause of Action.

## IX. PLAINTIFF'S FOURTH CAUSE OF ACTION, 42 U.S.C. § 1985(3)-CONSPIRACY TO DEPRIVE CIVIL RIGHTS, FAILS TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).

To bring a claim under 42 U.S.C. § 1985, a plaintiff must show:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)

[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy.... Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *A Soc'y Without A Name v.*

21

*Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955

Plaintiff's Complaint fails to allege any specific facts that support their bare conclusory allegations of agreement; there is no evidence of a meeting of the minds to deprive the Plaintiffs of any rights. Therefore, Plaintiff's Conspiracy claim fails and should be dismissed.

## X. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the defendants violated any of Plaintiff's constitutional rights, which is denied, defendants are entitled to prevail based upon qualified immunity. Government officials are protected by qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *DiMeglio v. Haines*, 45 F.3d 790, 794-95 (4th Cir. 1995) (*quoting Anderson v. Creighton,* 483 U.S. 635, 638 (1987). For this reason, immunity shields officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity. *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (2009). Defendants contend that qualified immunity also applies to Plaintiff's claims brought pursuant to 52 U.S.C. § 10307 and 42 U.S.C. 1985(3). When a plaintiff seeks to hold an official personally liable for his exercise of a discretionary function, the court must, in addressing the qualified immunity defense, consider whether the plaintiff has alleged a violation of

22

law that was clearly established at the time the challenged actions were taken. This inquiry is a pure question of law. S*ee, Harlow,* 457 U.S. at 818; *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992); *Siegert v. Gilley,* 500 U.S. 226, 231, 232 (1991); *Mitchell,* 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

Plaintiff has alleged no conduct on the part of the Defendants which deprived Plaintiff of a constitutional right that was clearly established at the time of their actions. Accordingly, Defendants are entitled to qualified immunity and the federal claims against them should be dismissed.

## XI. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiff has not alleged the degree of aggravated conduct necessary to warrant punitive damages, and therefore the claim should be dismissed. The purpose of an award of punitive damages is "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1 (emphasis added); *Hart v. Brienza*, 246 N.C. App. 426, 435, 784 S.E.2d 211, 218 (2016), *review denied*, 369 N.C. 69, 793 S.E.2d 223 (2016); *See also Juarez-Martinez v. Deans*, 108 N.C. App. 486, 495, 424 S.E.2d 154, 159–60 (1993) Whether the facts stated in the pleadings are sufficient to bring the case within the rule allowing punitive damages is a question of law[.]" *Newton v. Standard Fire Ins. Co*., 291 N.C. 105, 111, 229 S.E.2d 297,

300 (1976). "Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Id*. at 112, 229 S.E.2d, at 301. "The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself, as in slander cases." *Id*.

North Carolina General Statutes provide that in order to establish a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that the wrongful conduct was accompanied by fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15.

Plaintiffs failed to allege that their damages were a result of "one or more negligent, grossly negligent, careless, reckless, willful, wanton . . . acts and/or omissions and commissions on part of the Defendants. Plaintiffs failed to allege the required additional aggravating conduct, extrinsic to the underlying tort, and therefore their Complaint is insufficient to state a claim for punitive damages.

Respectfully submitted, this the 2nd day of March, 2021.

By:     /s/ *Paul G. Gessner*
        Paul G. Gessner, NC Bar #18213
        /s/*Patrick H. Flanagan*
        Patrick H. Flanagan, NC Bar #17407
        *Attorneys for Defendants Alamance*
        *County and Terry Johnson*
        CRANFILL SUMNER LLP
        P.O. Box 30787
        Charlotte, NC 28230
        Telephone (704) 332-8300

24

Facsimile (704) 332-9994
pgessner@cshlaw.com
phf@cshlaw.com

By:     */s/William L. Hill*
        William L. Hill, NC Bar #21095
        *Attorney for Defendants Alamance*
        *County, Terry Johnson and Cliff Parker*
        FRAZIER, HILL & FURY, R.L.L.P.
        2307 W. Cone Boulevard, Suite 260
        Post Office Drawer 1559
        Greensboro, North Carolina 27401
        Telephone: (336) 378-9411
        Facsimile: (336) 274-7358
        whill@frazierlawnc.com

By:     */s/Clyde B. Albright*
        Clyde B. Albright, NC Bar #10778
        *Attorney for Defendant Terry Johnson*
        ALAMANCE COUNTY ATTORNEY
        124 West Elm Street
        Graham, NC 27253
        Telephone: (336) 570-4046
        Facsimile: (336) 570-6788
        Clyde.Albright@alamance-nc.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), the undersigned hereby certifies that the forgoing Memorandum of Law in Support of Defendants Alamance County and Terry S. Johnson's Motion for Judgment on the Pleadings does not exceed the 6,250 word count limit.

BY: /s/*Paul G Gessner*
Paul G. Gessner, NC Bar #18213
*Attorney for Defendants Alamance*
*County and Terry Johnson*
CRANFILL SUMNER LLP
P.O. Box 27808
Raleigh, NC 27611
Telephone (919) 863-8734
Facsimile (919) 863-3477
pgessner@cshlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day filed the foregoing ***Alamance County and Terry S. Johnson's Memorandum of Law in Support of their Motion for Judgment on the Pleadings*** with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

Geraldine Sumter, gsumter@fergusonsumter.com
Anuja D. Thatte, athatte@naacpldf.org
Ashok Chandran, achandran@naacpldf.org
Clarence W. Phillips, cphillips@cov.com
Marianne Spencer, mspencer@cov.com
Leah Aden, laden@naacpldf.org
Morgan Lewis, mlewis@cov.com
Natasha Merle, nmerle@naacpldf.org
Elizabeth Haddix, ehaddix@lawyerscommittee.org
Daniel K. Siegel, dsiegel@acluofnc.org
Jaclyn A. Maffetore, jmaffetore@acluofnc.org
Kristi L. Graunke, kgraunke@acluofnc.org
Mark Dorosin, mdorosin@lawyerscommittee.org

*Attorneys for Plaintiffs*


Anthony Biller, ajbiller@envisage.law
Adam P. Banks, abanks@envisage.law
William L. Hill, whill@frazierlawnc.com
Clyde B. Albright, Clyde.Albright@alamance-nc.com

*Attorneys for Defendants*

This the 2nd day of March, 2021.

BY:  /s/*Paul G Gessner*
     Paul G. Gessner, NC Bar #18213
     *Attorney for Defendants Alamance*
     *County and Terry S. Johnson*
     CRANFILL SUMNER LLP
     P.O. Box 27808
     Raleigh, NC 27611
     Facsimile (919) 863-3477
     pgessner@cshlaw.com

27