IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No.: 1:20-cv-00997

| | | |
|---|---|---|
| SYLVESTER ALLEN, JR. *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF GRAHAM, *et al.*, | ) | **DEFENDANTS TERRY JOHNSON** |
| | ) | **AND CLIFF PARKER'S** |
| *Defendants.* | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF THEIR MOTION FOR** |
| ─────────────────── | ) | **JUDGMENT ON THE PLEADINGS** |
| | ) | |
| GREGORY DRUMWRIGHT, et al., | ) | ***(DRUMWRIGHT V. JOHNSON 1:20-*** |
| | ) | ***CV-00998)*** |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY JOHNSON, individually and | ) | |
| in his official capacity as Alamance | ) | |
| County Sheriff, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| ─────────────────── | | |

NOW COME Defendants, Terry Johnson, individually and in his official capacity as Alamance County Sheriff and Cliff Parker, individually and in his official capacity as Alamance County Chief Deputy Sheriff, (hereinafter "Defendants"), through the undersigned counsel, and pursuant to Rules 12(b) and (c) of the Federal Rules of Civil Procedure and local Civil Rule 7.2, hereby file this Memorandum of Law in Support of its Motion for Judgment on the Pleadings.

1

## STATEMENT OF THE CASE

Plaintiffs filed their initial Complaint for Temporary Restraining Order and Emergency Declaratory and Injunctive Relief, *Drumwright et al., v. Johnson et al.,* 1:20-cv-00998 in the Middle District of North Carolina on November 2, 2020. [DE 1] On December 4, 2020 this Honorable Court granted the Consent Motion to Consolidate this matter with *Sylvester Allen, Jr. et al., v. City of Graham et.al,* 1:20-cv-00997 for all pre-trial proceedings. [*Allen* DE 22][1]  With Defendants consent, the *Drumwright* Plaintiff's filed their First Amended Complaint [*Allen* DE 24] on December 11, 2020.  On December 14, 2020 the *Drumwright* Plaintiff's filed their Corrected First Amended Complaint. [*Allen* DE 25] These Defendants filed their Answer and Affirmative Defenses to Plaintiff's Corrected First Amended Complaint [*Allen* DE 31] on January 18, 2121.

Plaintiff's Corrected First Amended Complaint [*Allen* DE 25] alleges seven causes of action; Violation of First Amendment [*Id* ¶¶175-178], Violation of Fourth Amendment [*Id* ¶¶179-182], Violation of Section 11(b) of Voting Rights Act [*Id* ¶¶ 183-188], Ku Klux Klan Act of 1871 [*Id* ¶¶ 189-199], Violation of Article I, Section 14 of the North Carolina Constitution [*Id* ¶¶200-205] Violation of Article I, Section 12 of the North Carolina Constitution [*Id* ¶¶206-210] and Common Law Assault and Battery/Excessive Force [Id. ¶¶211-213].

---

[1] References identified as "[Allen DE___]" are documents filed in *Allen et al., v. City of Graham et al.,* 1:20-cv-00997 pursuant to the Court's Order to Consolidate but relate specifically to *Drumwright et al., v. Terry Johnson et al.,* 1:20-cv-00998.

## STATEMENT OF ALLEGED FACTS

On October 31, 2020, Plaintiffs participated in the "I am Change March to the Polls" in downtown Graham, North Carolina. [*Id* ¶1]. Organizers intended for the March to begin at Wayman's Chapel AME Church and proceed up North Main Street toward the Historic Courthouse and stop at the Alamance Court House square for a rally with speeches and ultimately culminate near the Elm Street polling place. [*Id* ¶¶ 72, 88]

When the March participants arrived at the Court House square they stopped in the street and conducted a moment of silence for 8 minutes and 46 seconds. [*Id* ¶ 95] Immediately after the remembrance, Plaintiff Drumwright told the crowd to wait while he put up the stage and sound system. [*Id* ¶ 97] Soon thereafter, officers discharged pepper spray against the protestors in the street. [*Id* ¶ 99] After the discharge of pepper spray, several speeches were made. [*Id* ¶¶111-112] Officers deployed pepper spray a second and third time. [*Id* ¶¶116, 124] A number of March attendees, including Plaintiff Drumwright, were arrested and charged with criminal violations related to the protest. [*Id* ¶¶ 127, 138] Plaintiff's Mitchell and Cook were able to go to the Elm St. early voting site and Plaintiff Cook was able to vote on October 31, 2020. [*Id.* ¶¶133-134]

## ARGUMENT

When a defendant moves to dismiss a plaintiff's complaint after the pleadings have been submitted, "Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised 'by motion for judgment on the pleadings, or at the trial on the merits.'" *Edwards v. City of Goldsboro*,

3

178 F.3d 231, 243 (4th Cir. 1999) (quoting Fed. R. Civ. P. 12(h)(2)). This is because "[a] motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards*, 178 F.3d at 243).

"The purpose of a Rule 12(b)(6) motion is to 'test the sufficiency of a complaint,' not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 213 (4th Cir. 2016)). In order for Plaintiff "[t]o survive a motion to dismiss, [Plaintiff] must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Id.* When ruling on a Rule 12(b)(6), the Court is to accept "all well-pleaded facts as true and [draw] all reasonable inferences in favor of the plaintiff." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 905 (2020). The Court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (quoting *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)) (internal quotations omitted).

Plaintiffs' "[b]are legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *King*, 825 F.3d at 214 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). At a minimum, "a plaintiff must 'nudge its claims across the line from conceivable to plausible' to resist dismissal." *Wag More Dogs, Ltd. Liab. Corp*, 680 F.3d at 365 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal punctuation omitted).

4

When a defendant challenges the subject matter jurisdiction of a plaintiff's Complaint, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (internal quotations omitted).

## I. PLAINTIFF J4tNG and AA4J LACK STANDING TO BRING ANY CLAIMS AGAINST THESE DEFENDANTS.

"J4tNG is an unincorporated association of community organizations organizing for racial justice and an end to police violence and other forms of systemic racial oppression." [DE 25 ¶9] "AA4J is an unincorporated membership organization" comprised of Alamance County citizens "to empower their voices where it pertains to racism, injustice and oppression".[Id. ¶11]    Both organizational plaintiffs fail to state any claim upon which relief can be granted and should be dismissed as a parties to this action.

### a. Plaintiffs failed to adequately plead the statutory pre-requisite to state a claim as an unincorporated association.

N.C. Gen. Stat. § 1-69.1 mandates that "[A]ny unincorporated association, organization, society, or general partnership bringing a suit in the name by which it is commonly known and called must allege that it has filed an assumed business name certificate under Article 14A of Chapter 66 of the General Statutes." "The statutory language of G.S. 1–69.1 is very clear and specific, i.e., any unincorporated association desiring to commence litigation in its commonly held name *must* allege the location of the recordation required by G.S. 66–68. *Highlands Twp. Taxpayers Ass'n v. Highlands Twp.*

Case 1:20-cv-00997-CCE-LPA   Document 53   Filed 03/02/21   Page 5 of 25

*Taxpayers Ass'n, Inc.*, 62 N.C. App. 537, 539, 303 S.E.2d 234, 236 (1983) "Strict construction of G.S. 1–69.1 requires that before an unincorporated association may gain the privilege of instituting a lawsuit in its common name, first there must be recordation of the necessary information required by G.S. 66–68 and then allegation of its specific location. *Id* at 539

A careful review of Plaintiff's Complaint shows that neither J4tNG or AA4J have complied with the mandatory prerequisites of N.C. Gen. Stat. § 1-69.1, therefore any claim brought by J4tNG and/or AA4J should be dismissed.

### b. Plaintiff's Complaint fails to establish that J4tNG or AA4J have direct organizational standing.

Organizations may establish standing in either of two ways; directly or representationally. Plaintiffs fail to establish standing under either theory.

"To have standing to bring a claim against a defendant, a plaintiff must demonstrate that: (1) it has suffered actual or imminent "injury in fact" which is both concrete and particularized; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)

In determining whether an organization has standing, the Court is called on to "conduct the same inquiry as in the case of an individual: Has the plaintiff 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"? *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S. Ct.

1114, 1124, 71 L. Ed. 2d 214 (1982) quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, at 261, 97 S.Ct. 555, at 561(1977) (emphasis omitted)

Plaintiff's Complaint does not allege that J4tNG or AA4J suffered any injury in fact. Although J4tNG pled "Defendants unlawful acts at the March frustrate Plaintiff J4tNG's overall mission and purpose [Id. ¶ 9] and that they had "to divert resources away from its other racial justice activities…" [Id. ¶10] these generalized and unsupported assertions are insufficient to support a claim. Plaintiffs make no allegations that AA4J diverted resources, although they make a generalized statement that "Defendants'…frustrated Plaintiff AA4J's mission and purpose for the March itself…" [Id. ¶12]

Assuming arguendo that Plaintiffs have sufficiently pled an actual "injury in fact", which these Defendants deny, Plaintiffs fail to establish a causal connection between the alleged conduct and the alleged injury. "[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976), *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)

Plaintiff's allegations that individuals did not vote, or were intimidated from voting as a result of Defendant's alleged conduct is contradicted by their own allegations that some Plaintiffs did in fact go to the polling place and voted. [*Id*. ¶133,134] Plaintiffs have

7

failed to establish a causal connection, particularly considering that it was the intervening misconduct of the March participants that led to their alleged inability to go to the polls.

Finally, Plaintiff's unwarranted inferences, unreasonable conclusions, and arguments do not establish that "it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560-61. Accordingly, Plaintiffs have failed to adequately state a claim that J4tNG and AA4J have direct organizational standing and their claims should be dismissed.

### c. Plaintiff's Complaint fails to establish that J4tNG and AA4J have representational standing.

Organizations such as J4tNG and AA4J may establish representational standing by meeting specific criteria. "Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1977)

J4tNG asserts it "is an unincorporated association of community organizations…" [*Id*. ¶ 9]. As such, J4tNG does not represent *individual* constitutional rights and can't have representational standing.

More problematic for J4tNG and AA4J to participate in this litigation as representational associations is the claims asserted and some of the relief requested requires the participation of individual members. "(W)hether an association has standing to invoke

8

the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, *in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind*." *Id*. Citing *Warth v. Seldin*, 422 U.S. 490, at 515, 95 S.Ct., at 2213. (*emphasis added*)

In addition to injunctive and declaratory relief, Plaintiff's Prayer for Relief [*Id*. Prayer for Relief ¶¶ a-e] seeks damages and punitive damages without specifying or particularizing individualized harms to J4tNG and AA4J. Following the rationale set forth in *Hunt*, the claims and relief requested by Plaintiffs requires the participation of the individual members. Plaintiff's Complaint fails to establish that J4tNG and AA4J have representational standing; the participation of individual members is necessary to establish the claims and justify at least some of the relief sought.

These Defendants respectfully submit that Plaintiffs have failed to establish that J4tNG and AA4J have standing in this matter. Plaintiff's Complaint fails to plead the statutorily required prerequisite as required by N.C. Gen. Stat. §1-69.1 and therefore fails to state a claim as an unincorporated association. Plaintiffs fail to plead that J4tNG and AA4J have direct organizational standing and fail to plead that J4tNG and AA4J have representational standing. Therefore, J4tNG and AA4J should be dismissed as parties to this action due to their lack of standing.

Case 1:20-cv-00997-CCE-LPA   Document 53   Filed 03/02/21   Page 9 of 25

## II. PLAINTIFF'S SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS SHERIFF TERRY S. JOHNSON AND CLIFF PARKER IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED FOR FAILURE TO NAME THE SURETY AS A PARTY TO THE SUIT.

Plaintiffs have attempted to assert a state law claim, at least in part, against Sheriff Terry S. Johnson and Chief Deputy Cliff Parker in their official capacities. Because the Plaintiffs failed to name the Sheriff's surety company as a defendant to the action, this cause of action against these Defendants in their official capacity should be dismissed. For the reasons stated below, this cause of action against these Defendants in their individual capacity should also be dismissed.

Governmental immunity protects both the Sheriff and his deputies from official capacity suits arising from torts allegedly committed while they were engaged in a governmental function. *Schlossberg v. Goins*, 141 N.C. App. 436, 439, 540 S.E. 2d 49, 52 (2000). This immunity may be waived by the purchase of insurance or by purchasing a bond as required by N.C. Gen. Stat. §162-8. *White v. Cochran*, 229 N.C. App. 183, 189-90, 748 S.E. 2d 334, 339-40 (2013). N.C. Gen. Stat. §192-8 provides that the "sheriff shall furnish a bond payable to the State of North Carolina for the ... the faithful execution of his office as sheriff." The amount of the bond is determined by the board of county commissioners but shall be for no more than $25,000. N.C. Gen. Stat. §162-8 This statute is a limited waiver, to the extent of the bond, of the sheriff's governmental immunity. *Messick v. Catawba County*, 110 N.C. App. 707, 715, 431 S.E. 2d 489, 494 (1993)

However, under the plain language of the statute and interpretive case law, the sheriff's immunity is waived "<u>only where the surety is joined as a party to the action</u>."

*Summey v. Barker*, 142 N.C. App. 688, 691, 544 S.E. 2d 262, 265 (2001) (emphasis added) *See also Sellars*, 149 N.C. App. at 624, 561 S.E. 2d at 339 ("a sheriff's immunity is removed only where the surety is joined as a party to the action.") *Messick*, 110 N.C. App. at 715, 431 S.E. 2d at 494 ("The statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity, but only where the surety is joined as a party to the action.") *White*, 229 N.C. App. at 190 748 S.E. 2d at 340 ("the purchase of a bond precludes a sheriff from relying upon the protective embrace of governmental immunity...only where the surety is joined as a party to the action.")

"A plaintiff bringing claims against a governmental entity and its employees acting in their official capacities bears the burden of alleging and proving that the officials have waived their sovereign immunity or otherwise consented to suit. If he fails to do so, the plaintiff fails to state a cognizable claim against a governmental unit or employee." (internal citations omitted); *Messick*, 110 N.C. App. at 714, 431 S.E. 2d at 494.

There is no dispute that the Plaintiffs have failed to name Sheriff's Johnson's surety as a party to this action. Plaintiff's failure to name the surety is fatal to their Seventh Cause of Action-Common Law Assault and Battery claim against Sheriff Johnson and Chief Deputy Parker in their official capacity and this claim should be dismissed.

## III. PLAINTIFF'S SEVENTH CAUSE OF ACTION AGAINST SHERIFF JOHNSON AND CHIEF DEPUTY PARKER IN THEIR INDIVIDUAL CAPACITY SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Assuming *arguendo* that Plaintiffs have alleged sufficient facts to support their state law claim, which Defendants deny, Defendant Sheriff Terry S. Johnson and Chief Deputy

11

Parker are entitled to public official immunity and the claims brought against them in their individual capacity should be dismissed.

North Carolina courts have held that "public officers and public employees are generally afforded different protections under the law when sued in their individual capacities." *Schmidt v. Breeden,* 134 N.C. App. 248, 258, 517 S.E.2d 171,177–78. (1999) "An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power." *State v. Hord,* 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965). Plaintiff's Complaint alleges that Sheriff Johnson is sued "individually and in his official capacity as Sheriff of Alamance County [DE 25, ¶ 27] and "[A]t all relevant, Defendant Johnson was acting within the scope of his employment and under the color of state law". [*Id*, ¶ 28]. Likewise, Plaintiff's Complaint alleges that Defendant Cliff Parker is sued in both his official and individual capacity and that that he was acting within the scope of his employment and under the color of state law, [Id. ¶29-30] There is no question that the positions held by Sheriff Johnson and Chief Deputy Parker and the duties they executed were created by statute and involve the exercise of sovereign power. Clearly, at all times relevant to this action these Defendants were public officers.

A public officer is shielded from liability unless he engaged in discretionary actions which were allegedly: (1) corrupt, *Wiggins v. City of Monroe,* 73 N.C.App. 44, 49, 326 S.E.2d 39, 43 (1985); (2) malicious, *id.;* (3) outside of and beyond the scope of his duties, *id.;* (4) in bad faith, *Hare v. Butler,* 99 N.C.App. 693, 700, 394 S.E.2d 231, 236; or

12

(5) willful and deliberate, *Harwood v. Johnson,* 92 N.C.App. 306, 310, 374 S.E.2d 401, 404 (1988). *Reid v. Roberts,* 112 N.C.App. 222, 224, 435 S.E.2d 116, 119, *disc. review denied,* 335 N.C. 559, 439 S.E.2d 151 (1993). (*As cited in Schmidt v. Breeden*, 134 N.C. App. 248, 258, 517 S.E.2d 171, 178 (1999)

Plaintiffs have not alleged, and cannot allege, any facts showing malicious or corrupt conduct by any of these Defendants; that they acted outside of and beyond the scope of their duties; acted in bad faith; or acted willfully and deliberately.  "An act is done wilfully when it is done purposely and deliberately in violation of law (State v. Whitener, 93 N.C. 590; State v. Lumber Co., 153 N.C. 610, 69 S.E. 58), or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. McKinney v. Patterson, (174 N.C. 483, 9 S.E. 967)" *Siders v. Gibbs*, 39 N.C. App. 183, 186, 249 S.E.2d 858, 860 (1978)

To the contrary, taking the allegations in Plaintiff's Complaint involving these defendants as true, Plaintiffs have alleged nothing more than generalized unspecific and wholly unsupported allegations based on conjecture and speculation.

 "[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997).   Here, there are no supporting facts.

13

Thus, for the reasons set forth above, Sheriff Johnson and Chief Deputy Parker are entitled to public official immunity and respectfully request this Honorable Court to dismiss all claims brought against him in their individual capacity.

## IV. PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS DENOMINATED AS PLAINTIFF'S FIFTH AND SIXTH CAUSE OF ACTION FAIL PURSUANT TO RULE 12(B)(6) GIVEN THE EXISTENCE OF AN ADEQUATE STATE LAW REMEDY.

Defendants move, pursuant to F. R. Civ. P. Rule 12(b)(6), to dismiss Plaintiff's Fifth and Sixth Cause of Action in that Plaintiff's Complaint fails to state a claim upon which relief can be granted under the North Carolina Constitution. Specifically, Plaintiff's Complaint fails to establish that there is no other adequate remedy in state law available.

First, it is obvious that Plaintiff has adequate remedies at state law. Generally, a Plaintiff may bring a direct claim under the North Carolina Constitution only if no other adequate state law remedy exists. *Corum v. Univ. of North Carolina*, 330 N.C. 761, 782, 413 S.E. 2d 276, 289 (1992). Thus, to assert a direct constitutional claim, "a plaintiff must allege that no adequate state remedy exists to provide relief from the injury." *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E. 2d 426, 428 (2010). Under applicable North Carolina law, "an adequate remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the same injury alleged in the direct constitutional claim." *Estate of Fennell ex rel. Fennell v. Stephenson*, 137 N.C. App. 430, 436, 528 S.E. 2d 911, 915-16 (2000*), reversed in part on other grounds*, 354 N.C. 327, 554 S.E. 2d 629 (2001). Moreover, an adequate remedy is one that "provide[s] the possibility of relief under the circumstances." *Craig ex rel. Craig v. New*

14

*Hanover Cty. Bd. Of Educ.*, 363 N.C. 334, 340, 678 S.E. 2d 351, 355 (2009). Thus "to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id*

In their complaint, Plaintiffs have asserted five claims in addition to their North Carolina Constitutional claim. These claims include other constitutional claims as well as a North Carolina common law claim of assault and battery, enumerated as Plaintiff's Seventh Cause of Action. This remedy, if successful, would compensate plaintiff. Additionally, plaintiff has clear access to the courthouse with this aforementioned claim.

It is undeniable that Plaintiff's Complaint alleges additional causes of action, which establish that adequate state remedies exist to provide relief from the alleged injury. As such, Defendants submit that Plaintiff's North Carolina Constitution claim fails, and move this Honorable Court to dismiss Plaintiff's Fifth and Sixth Claims for Relief accordingly.

## V. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE FIRST CAUSE OF ACTION VIOLATION OF THE FIRST AMENDMENT SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).

The question raised by Plaintiffs in their First Cause of Action is whether their First Amendment rights of free expression, free association, and assembly were violated by Defendants. Defendants contend that they were not.

It is well established that government entities may "enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *United States Postal Service v. Council of Greenburgh,* 453 U.S. 114,

Case 1:20-cv-00997-CCE-LPA   Document 53   Filed 03/02/21   Page 15 of 25

132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981); *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 535–536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Grayned v. City of Rockford, supra,* 408 U.S., at 115, 92 S.Ct., at 2302; *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). *Cited in Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 955, 74 L. Ed. 2d 794 (1983)

Here, the complained of uses of force; "unlawful dispersal orders, threats of arrest, and use of pepper spray to forcibly disperse..." [*Id*. ¶178] were content neutral and used only after Plaintiff's blocked the roadway by "kneeling standing, sitting or lying face down" [*Id*. ¶95] and were told by Plaintiff Drumwright to "wait for a moment while he put up the stage" [*Id*. ¶97], in violation of N.C. Gen. Stat. §20-174.1, and after Plaintiffs refused to disperse in violation of N.C. Gen. Stat. §14-288.5. [*Id*. ¶127] Defendants' acts were narrowly tailored to serve a legitimate government interest in clearing the streets and stopping an unlawful assembly and left open ample alternative channels of communication. In particular, after the first dispersal the demonstration was not stopped, but proceeded with several speakers. [*See Id*. ¶112]

Plaintiffs' First Cause of Action should be dismissed for failing to state a claim upon which relief can be granted.

## VI. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE SECOND CAUSE OF ACTION, VIOLATION OF FOURTH AMENDMENT SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).

16

A use of force is judged by the "objective reasonableness" standard, taking into account the "totality of the circumstances" from the perspective of a reasonable officer on the scene. *Graham v. Conner*, 490 U.S. 386, 399 (1989) This inquiry depends on the conditions that exist at the moment force is used, recognizing that officers are forced to make split-second judgments in circumstances that are "tense, uncertain, and rapidly evolving." *Id*. At 396-97. "[R]easonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight". *Abney v. Coe*, 493 F. 3d 412, 415 (4th Cir. 2007) Indeed, [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Saucier v. Katz*, 533 U.S. 194, 209 (2001), *rev'd on other grounds*, 555 U.S. 223 (2009)

Defendants respectfully request that the Court find that Plaintiffs have failed state a claim upon which relief may be made and dismiss Plaintiff's Second Cause of Action.

**VII. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE THIRD CAUSE OF ACTION, VIOLATION OF SECTION 11(b) OF THE VOTING RIGHTS ACT SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).**

In order for a plaintiff to succeed on a claim brought pursuant to Section 11(b) of the Voting Rights Act, codified as 52 U.S.C. §10307(b), a plaintiff must show both an act of intimidation or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate. *See Olagues v. Russoniello,* 770 F.2d 791, 804 (9th Cir.1985) (noting that even assuming that plaintiffs' evidence showed that voters were intimidated when officials searched voting records, plaintiffs could not succeed for failure

to show that the officials intended to intimidate) (citing *United States v. McLeod,* 385 F.2d 734, 740–41 (5th Cir.1967)). *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016)

Defendants first assert that Plaintiffs have not, and cannot establish that the alleged acts of the Defendants were acts of intimidation or attempts to intimidate, or any other acts proscribed in 52 U.S.C. 10307(b). Defendant's actions were justified and lawful responses to Plaintiff's conduct. Other than Plaintiff's speculation and conjecture, there is no causal link between the alleged conduct and the claimed or perceived harms alleged by the Plaintiffs.

Second, Plaintiff's cannot show that the Defendants intended to interfere with Plaintiff's right to vote. Plaintiffs attempt to establish that Defendants intended to violate various constitutional rights "through unlawful dispersal orders, use of pepper spray, and threats of arrest the conspiracy." [*Id*. ¶186] Admittedly, the officers were likely communicating, but to suggest that they were plotting or expressing intentions to interfere with Plaintiff's voting rights is wholly unsupported and speculative.

Defendants recognize that Plaintiff's will likely argue that 52 U.S.C. 10307(b) contains no specific language requiring a showing of specific intent, an issue that is unsettled and has not been addressed by the Fourth Circuit. Congress, in enacting 52 U.S.C. §10307(b), included attempted acts of voter intimidation. Although this is an issue generally addressed in the criminal context, an attempt requires intent. It seems axiomatic to apply the same legal reasoning and rationale here. Defendants respectfully request this Court to apply a subjective standard, and require some factually supported allegation that

Defendants subjectively intended the conduct as a threat or intimidation, which Plaintiffs have failed to do.

## VIII. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AND THE FOURTH CAUSE OF ACTION, KU KLUX KLAN ACT OF 1871, SHOULD BE DISMISSED PURSUANT TO F.R. CIV. P. RULE 12(b)(6).

To bring a claim under the Ku Klux Klan Act of 1871, otherwise known and codified as 42 U.S.C. § 1985(3), a plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)

[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy.... Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955

Plaintiff's Complaint fails to allege any specific facts that support their bare conclusory and wholly unsupported allegations of a conspiracy or agreement; there is no

evidence of a meeting of the minds among the Defendants to deprive the Plaintiffs of any rights. Therefore, Plaintiff's Conspiracy claim fails and should be dismissed.

## IX. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the Defendants violated any of Plaintiff's constitutional rights, which is denied, Defendants are entitled to prevail based upon qualified immunity. Government officials are protected by qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *DiMeglio v. Haines*, 45 F.3d 790, 794-95 (4th Cir. 1995) (*quoting Anderson v. Creighton,* 483 U.S. 635, 638 (1987). For this reason, immunity shields officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity. *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (2009). When a plaintiff seeks to hold an official personally liable for his exercise of a discretionary function, the court must, in addressing the qualified immunity defense, consider whether the plaintiff has alleged a violation of law that was clearly established at the time the challenged actions were taken. This inquiry is a pure question of law. S*ee, Harlow,* 457 U.S. at 818; *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992); *Siegert v. Gilley,* 500 U.S. 226, 231, 232 (1991); *Mitchell,* 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

20

Plaintiff has alleged no conduct on the part of the Defendants which deprived Plaintiff of a constitutional right that was clearly established at the time of their actions. Accordingly, Defendants are entitled to qualified immunity and the federal claims against them should be dismissed.

## XI. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiff has not alleged the degree of aggravated conduct necessary to warrant punitive damages, and therefore the claim should be dismissed. The purpose of an award of punitive damages is "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1 (emphasis added); *Hart v. Brienza*, 246 N.C. App. 426, 435, 784 S.E.2d 211, 218 (2016), *review denied*, 369 N.C. 69, 793 S.E.2d 223 (2016); *See also Juarez-Martinez v. Deans*, 108 N.C. App. 486, 495, 424 S.E.2d 154, 159–60 (1993) Whether the facts stated in the pleadings are sufficient to bring the case within the rule allowing punitive damages is a question of law[.]" *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 300 (1976). "Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Id*. at 112, 229 S.E.2d, at 301. "The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself, as in slander cases." *Id*.

North Carolina General Statutes provide that in order to establish a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that the wrongful conduct was accompanied by fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15.

Plaintiffs has failed to allege that their damages were a result of "one or more negligent, grossly negligent, careless, reckless, willful, wanton . . . acts and/or omissions and commissions on part of the Defendants. Plaintiffs have also failed to allege the required additional aggravating conduct, extrinsic to the underlying tort, and therefore their Complaint is insufficient to state a claim for punitive damages.

Respectfully submitted, this the 2nd day of March, 2021.

By: /s/ *Paul G. Gessner*
Paul G. Gessner, NC Bar #18213
/s/*Patrick H. Flanagan*
Patrick H. Flanagan, NC Bar #17407
*Attorneys for Defendants Alamance*
*County and Terry Johnson*
CRANFILL SUMNER LLP
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
pgessner@cshlaw.com
phf@cshlaw.com

By: /s/*William L. Hill*
William L. Hill, NC Bar #21095
*Attorney for Defendants Alamance*
*County, Terry Johnson and Cliff Parker*
FRAZIER, HILL & FURY, R.L.L.P.
2307 W. Cone Boulevard, Suite 260
Post Office Drawer 1559

22

Greensboro, North Carolina 27401
Telephone: (336) 378-9411
Facsimile: (336) 274-7358
whill@frazierlawnc.com

By: */s/Clyde B. Albright*
Clyde B. Albright, NC Bar #10778
*Attorney for Defendant Terry Johnson*
ALAMANCE COUNTY ATTORNEY
124 West Elm Street
Graham, NC 27253
Telephone: (336) 570-4046
Facsimile: (336) 570-6788
Clyde.Albright@alamance-nc.com

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.3(d), the undersigned hereby certifies that the forgoing Memorandum of Law in Support of Defendants Terry Johnson and Cliff Parker's Motion for Judgment on the Pleadings does not exceed the 6,250 word count limit.

BY: <u>/s/*Paul G Gessner*</u>
Paul G. Gessner, NC Bar #18213
*Attorney for Defendants Alamance*
*County and Terry Johnson*
CRANFILL SUMNER LLP
P.O. Box 27808
Raleigh, NC 27611
Telephone (919) 863-8734
Facsimile (919) 863-3477
pgessner@cshlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day filed the foregoing ***Defendants Terry Johnson and Cliff Parker's Memorandum of Law in Support of their Motion for Judgment on the Pleadings*** with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following:

> Geraldine Sumter, gsumter@fergusonsumter.com
> Anuja D. Thatte, athatte@naacpldf.org
> Ashok Chandran, achandran@naacpldf.org
> Clarence W. Phillips, cphillips@cov.com
> Marianne Spencer, mspencer@cov.com
> Leah Aden, laden@naacpldf.org
> Morgan Lewis, mlewis@cov.com
> Natasha Merle, nmerle@naacpldf.org
> Elizabeth Haddix, ehaddix@lawyerscommittee.org
> Daniel K. Siegel, dsiegel@acluofnc.org
> Jaclyn A. Maffetore, jmaffetore@acluofnc.org
> Kristi L. Graunke, kgraunke@acluofnc.org
> Mark Dorosin, mdorosin@lawyerscommittee.org
>
> *Attorneys for Plaintiffs*
>
>
> Anthony Biller, ajbiller@envisage.law
> Adam P. Banks, abanks@envisage.law
> William L. Hill, whill@frazierlawnc.com
> Clyde B. Albright, Clyde.Albright@alamance-nc.com
>
> *Attorneys for Defendants*

This the 2nd day of March, 2021.

                              BY:    /s/*Paul G Gessner*
                                     Paul G. Gessner, NC Bar #18213
                                     *Attorney for Defendants Alamance*
                                     *County and Terry Johnson*
                                     CRANFILL SUMNER LLP
                                     P.O. Box 27808
                                     Raleigh, NC 27611
                                     Facsimile (919) 863-3477
                                     pgessner@cshlaw.com