# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SYLVESTER ALLEN, JR., *et al.*, | |
| *Plaintiffs*, | |
| v. | |
| CITY OF GRAHAM, *et al.*, | **1:20-cv-0997-CCE-LPA** |
| *Defendants*. | |
| JUSTICE FOR THE NEXT GENERATION, *et al.*, | |
| *Plaintiffs*, | |
| v. | **1:20-cv-00998-CCE-LPA** |
| TERRY JOHNSON, individually and in his official capacity as Alamance County Sheriff, *et al.*, | |
| *Defendants*. | |

### *ALLEN* PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ALAMANCE COUNTY AND TERRY S. JOHNSON'S MOTION <u>FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 51)</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................ 1

RELEVANT FACTUAL BACKGROUND ............................................... 2

ARGUMENT........................................................................................... 3

I.    FUTURE ALAMANCE HAS STANDING. ........................................ 3

      A.    N.C. Gen. Stat. § 1-69.1(a)(3) Is Irrelevant................................ 3

      B.    Future Alamance Has Organizational Standing. ......................... 4

      C.    Future Alamance Has Associational Standing. ........................... 5

II.   PLAINTIFFS STATE FEDERAL CONSTITUTIONAL CLAIMS
      AGAINST ALAMANCE COUNTY. ..................................................... 7

      A.    Sheriff Johnson is a Final Policymaker for the County with Respect
            to Law Enforcement Activities. ................................................... 8

      B.    At Minimum, Sheriff Johnson is a Final Decisionmaker with
            Respect to the Regulation and Use of County Property............... 9

      C.    Defendants' Arguments to the Contrary Are Unavailing and Would
            Leave No Remedy for Unconstitutional Policing Policies. ....... 10

III.  NO IMMUNITY SHIELDS SHERIFF JOHNSON FROM PLAINTIFFS'
      STATE ASSAULT AND BATTERY CLAIM..................................... 11

      A.    Sheriff Johnson is Not Entitled to Immunity in His Personal
            Capacity...................................................................................... 12

      B.    Sheriff Johnson Has Waived Governmental Immunity in His Official
            Capacity, and Plaintiffs Should Be Permitted to Amend. .......... 13

IV.   PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS ARE WELL-
      PLEADED..................................................................................... 13

V.    PLAINTIFFS' FEDERAL CLAIMS ARE ADEQUATELY ALLEGED............. 14

      A.    Plaintiffs Adequately Allege Violation of Section 11(b) of the
            Voting Rights Act........................................................................ 14

i

B.  Plaintiffs Adequately Allege First Amendment Retaliation. ...................... 19

C.  Plaintiffs Adequately Allege Fourth Amendment Excessive Force. .......... 20

D.  Plaintiffs Adequately Allege Violation of Section 1985(3) of the
    KKK Act.................................................................................................. 21

E.  Qualified Immunity Is Unavailable. .......................................................... 22

VI.  PLAINTIFFS ADEQUATELY PLEADED THEIR PUNITIVE
     DAMAGES REQUEST. ......................................................................... 23

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Am. Humanist Ass'n v. Maryland-Nat'l Capital Park & Planning Comm'n*,
  874 F.3d 195 (4th Cir. 2017) ...................................................................... 7

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) ...................................................................... 6

*Bartley v. City of High Point*,
  846 S.E.2d 750 (N.C. Ct. App. 2020) ....................................................... 12

*Bone v. Univ. of N. Carolina Health Care Sys.*,
  No. 18-cv-994, 2021 WL 395547 (M.D.N.C. Feb. 4, 2021) ........................ 3

*Boyd v. Robeson Cty.*,
  169 N.C. App. 460 (2005) ............................................................................ 9

*Estate of Bryant v. Baltimore Police Dep't*,
  No. 19-cv-384, 2020 WL 673571 (D. Md. Feb. 10, 2020) ........................... 7

*Cooper v. Nichols*,
  No. 17-cv-466, 2019 WL 418856 (E.D. Va. Feb. 1, 2019) ........................ 22

*Corum v. Univ. of N. Carolina*,
  330 N.C. 761 (1992) ............................................................................ 13, 14

*Daschle v. Thune*,
  ECF No. 6, No. 04-civ-4177 (D.S.D. Nov. 1, 2004) .................................. 18

*Davis v. G. Allen Equip. Corp.*,
  No. 20-cv-49, 2020 WL 4451169 (E.D.N.C. Aug. 3, 2020) ....................... 23

*Ewing v. Silvious*,
  481 F. App'x. 802 (4th Cir. 2012) ............................................................. 22

*Fair v. Lincoln Cty.*,
  No. 20-cv-27, 2020 WL 2091071 (W.D.N.C. Apr. 29, 2020) .................... 11

*Finch v. Wilson Cty.*,
  No. 19-cv-550, 2020 WL 6532828 (E.D.N.C. Nov. 5, 2020) .................... 11

*Freed v. Herndon*,
  No. 19-cv-599, 2020 WL 5816497 (D. Md. Sept. 29, 2020) ...................................... 20

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................................. 4, 5

*Hayes v. Self-Help Credit Union*,
  No. 13-cv-880, 2014 WL 4198412 (M.D.N.C. Aug. 22, 2014) ................................... 1

*Hines v. Johnson*,
  No. 19-cv-515, 2021 WL 468972 (M.D.N.C. Feb. 9, 2021) ..................................... 13

*Hogan v. Cherokee Cty.*,
  No. 18-cv-96, 2019 WL 2591089 (W.D.N.C. Feb. 28, 2019) ................................... 10

*Hunter v. Town of Mocksville*,
  897 F.3d 538 (4th Cir. 2018) ...................................................................................... 7

*Jackson v. Mecklenburg Cty.*,
  No. 07-cv-218, 2008 WL 2982468 (W.D.N.C. July 30, 2008) .................................. 4

*Jones v. Buchanan*,
  325 F.3d 520 (4th Cir. 2003) .................................................................................... 21

*Katzenbach v. Original Knights of Ku Klux Klan*,
  250 F. Supp. 330 (E.D. La. 1965) ....................................................................... 15, 16

*League of United Latin Am. Citizens - Richmond Region Council 4614 v.*
*Pub. Int. Legal Found.*,
  18-cv-423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018)
  ................................................................................................... 15, 16, 17, 18

*Little v. Smith*,
  114 F. Supp. 2d 437 (W.D.N.C. 2000) ..................................................................... 11

*Liverman v. City of Petersburg*,
  844 F.3d 400 (4th Cir. 2003) ...................................................................................... 7

*Lopp v. Anderson*,
  251 N.C. App. 161 (2016) .......................................................................................... 13

*Lowe v. Spears*,
  No. 06-cv-0647, 2007 WL 9718279 (S.D. W.Va. May 4, 2007) .............................. 23

iv

*Martin v. Duffy*,
858 F.3d 239 (4th Cir. 2017) ........................................................................ 19

*Md. Highways Contractors Ass'n, Inc. v. State of Md.*,
933 F.2d 1246 (4th Cir. 1991) ........................................................................ 4

*Moran v. Polk Cty.*,
No. 18-cv-300, 2019 WL 5297027 (W.D.N.C. Sept. 3, 2019) ........................ 9

*N. Iredell Neighbors for Rural Life v. Iredell Cty.*,
196 N.C. App. 68 (2009) ................................................................................ 4

*Nat'l Coal. on Black Civic Participation v. Wohl*,
No. 20-cv-8668, 2020 WL 6305325 (S.D.N.Y. Oct. 28, 2020) ............... 15, 16

*Nieves v. Bartlett*,
139 S. Ct. 1715 (2019) .................................................................................. 20

*Olagues v. Ruossoniello*,
770 F.2d 791 (9th Cir. 1985) ........................................................................ 18

*Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*,
983 F.3d 671 (4th Cir. 2020) .......................................................................... 6

*Parson v. Alcorn*,
157 F. Supp. 3d 479 (E.D. Va. 2016) ........................................................... 18

*Phillips v. Pitt Cty. Mem. Hosp.*,
572 F.3d 176 (4th Cir. 2009) ........................................................................ 10

*Quarles v. Weeks*,
No. 16-cv-304, 2017 WL 9513018 (W.D.N.C. July 6, 2017) ....................... 24

*Raub v. Bowe*,
960 F. Supp. 2d 602 (E.D. Va. 2013) ...................................................... 22, 23

*Roberts v. Swain*,
126 N.C. App. 712 (1997) ............................................................................. 12

*Semple v. City of Moundsville*,
195 F.3d 708 (4th Cir. 2012) .......................................................................... 7

*Short v. Stokes*,
No. 18-cv-741, 2021 WL 620933 (M.D.N.C. Feb. 17, 2021) ......................... 3

v

*Smith v. State*,
    289 N.C. 303 (1976) ................................................................ 13

*Sierra Club v. United States Dep't of the Interior*,
    899 F.3d 260 (4th Cir. 2018) ...................................................... 5

*Taylor v. Wake Cty.*,
    258 N.C. App. 178 (2018) .......................................................... 13

*Thompson v. Town of Dallas*,
    142 N.C. App. 651 (2001) .......................................................... 24

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) ............................................. 19, 23

*United States v. McLeod*,
    385 F.2d 734 (5th Cir. 1967) ............................................. 16, 18

*Wilcoxson v. Buncombe County*,
    129 F. Supp. 3d 308 (W.D.N.C. 2014) ......................... 8, 9, 10, 11

*Willingham v. Crooke*,
    412 F.3d 553 (4th Cir. 2005) ...................................................... 22

*Wilson v. Thomas*,
    43 F. Supp. 3d 628 (E.D.N.C. 2014) ........................................... 3

**Statutes**

42 U.S.C. § 1983 ......................................................... 7, 9, 11, 23

42 U.S.C. § 1985(3) .................................................. 21, 22, 23

52 U.S.C. § 10101(b) ...................................................... 15, 17

52 U.S.C. § 10307 ................................................................ 23

52 U.S.C. § 10307(b) .............................................. 14, 16, 17

N.C. Gen. Stat. § 1-69.1(a)(3) ................................................ 3, 4

N.C. Gen. Stat. § 1D-1 ............................................................ 23

N.C. Gen. Stat. § 153A-103 ...................................................... 9

Case 1:20-cv-00997-CCE-LPA   Document 61   Filed 03/23/21   Page 7 of 35

N.C. Gen. Stat. § 153A-146, *et seq.* ................................................................. 9

N.C. Gen. Stat. § 153A-169 ............................................................................... 9

N.C. Gen. Stat. § 162-24 ............................................................................. 8, 11

N.C. Gen. Stat. § 12816 ...................................................................................... 8

**Other Authorities**

Const. N.C. Art. VII, § 1 ..................................................................................... 8

H.R. Rep. No. 89-439 (1965) .......................................................................... 17

Alamance Cty. Historic Courthouse Facility Reservation Permit
    Application, available at https://www.alamance-nc.com/sheriff/wp-
    content/uploads/sites/25/2020/08/Historic-Courthouse-Permit-
    Application-Packet.pdf ............................................................................... 9

Alamance Cty. Organizational Chart, available at https://www.alamance-
    nc.com/county-government/organizational-chart/ ...................................... 10

## PRELIMINARY STATEMENT

The motion for judgment on the pleadings of Defendants Alamance County (the "County") and Sheriff Terry S. Johnson (together, "Defendants") ("Defs. Mot.") is a case study in inadequate presentation and obfuscation: Defendants assert no fewer than *eleven* underdeveloped arguments—some as short as three sentences long—that lack basis in law or fact and serve only to obscure the issues before the Court. Defendants largely ignore the well-pleaded allegations in Plaintiffs' First Amended Complaint ("FAC" or "Amended Complaint") (Dkt. No. 24) as well as the very case law they cite. For these reasons alone, much of Defendants' Motion should be summarily denied. *See Hayes v. Self-Help Credit Union*, No. 13-cv-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (ruling argument waived where party "cited no legal authority of any kind").

Focusing on the FAC's allegations, as it must at this stage, this Court should find that Plaintiffs have adequately pleaded their claims. The FAC alleges that Alamance County Sheriff's Office ("ACSO") deputies unleashed pepper spray on multiple occasions at a peaceful march to the polls at the direction and with the express approval of Sheriff Johnson. And Sheriff Johnson, in turn, is authorized to make law enforcement policy on behalf of the County. Those allegations state plausible claims for violations of the federal Constitution, federal voting rights statutes, the North Carolina Constitution, and common law. Defendants' Motion should be denied.

1

## RELEVANT FACTUAL BACKGROUND

Plaintiffs allege that members of ACSO, with the approval of Sheriff Johnson, FAC ¶¶ 62–63, 66–67, 70, 73, deployed pepper spray on at least three occasions at an October 31, 2020 march, including on Alamance County's courthouse property, *id.* ¶¶ 54-56. The march was (i) titled the "I Am Change, Legacy March to the Polls" (the "March"), *id.* ¶ 41, n.4, (ii) organized to encourage "people to go to the polls and vote for change"; "serve as a moment of political power for Black communities"; and protest police violence, *id.* ¶¶ 41, 44–45, (iii) held on the final day of voter registration and early voting in North Carolina, *id.* ¶¶ 86–87, and (iv) intended to end one block from a polling place, so that attendees could thereafter register to vote and/or vote, *id.* ¶¶ 40, 42–43, 74. In addition to their physical and emotional injuries from Defendants' conduct, three of the individual Plaintiffs and at least one member of organizational Plaintiff Future Alamance "all had planned to vote on October 31, 2020, following the March" but "none were able to do so as a result of the violence that Defendants directed at them and others." *Id*. ¶ 84. Also as a result of Defendants' conduct, multiple Plaintiffs "were fearful of attempting to vote on Election Day," three days after the March. *Id.* ¶¶ 110, 120, 145. And because one Plaintiff was prevented from registering to vote after the March, on the last opportunity to register, Defendants' actions "denied [him] the right to vote in the 2020 general election altogether." *Id.* ¶¶ 84, 88, 122–23.

## ARGUMENT

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is analyzed according to the same standard as a Rule 12(b)(6) motion." *Short v. Stokes*, No. 18-cv-741, 2021 WL 620933, at *5 (M.D.N.C. Feb. 17, 2021). Thus, the Court must accept Plaintiffs' allegations as true, and draw all reasonable inferences in their favor. *Bone v. Univ. of N. Carolina Health Care Sys.*, No. 18-cv-994, 2021 WL 395547, at *6 (M.D.N.C. Feb. 4, 2021).

Applying these standards, Defendants' Motion must be denied. Plaintiff Future Alamance has both organizational and associational standing, notwithstanding Defendants' reliance on an inapplicable state statute and inaccurate readings of other law. Plaintiffs' state law claims may also proceed: no alternative remedy forecloses Plaintiffs' state constitution claims, and no immunity shields ACSO's conduct at the March. Finally, Plaintiffs' federal claims are well-pleaded, and their federal constitutional claims are properly brought against the County.

## I.     FUTURE ALAMANCE HAS STANDING.

In federal court, Future Alamance need demonstrate only one form of standing—associational or organizational—to raise its claims. *See Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014). It has adequately alleged both.

### A.     N.C. Gen. Stat. § 1-69.1(a)(3) Is Irrelevant.

As an initial matter, Defendants mistakenly contend that Future Alamance lacks standing absent allegations that it filed an "assumed business name certification" under

N.C. Gen. Stat. § 1-69.1(a)(3). Defs. Mot. at 5. But N.C. Gen. Stat. § 1-69.1(a)(3) is a state law "pleading requirement[]," *N. Iredell Neighbors for Rural Life v. Iredell Cty.*, 196 N.C. App. 68, 75 (2009), and therefore inapplicable to this federal action. *Jackson v. Mecklenburg Cty.*, No. 07-cv-218, 2008 WL 2982468, at *2 (W.D.N.C. July 30, 2008) ("North Carolina 'pleading requirements . . . are irrelevant in federal court even as to claims arising under state law.'" (citation omitted)). Accordingly, N.C. Gen. Stat. § 1-69.1(a)(3) has no bearing on Future Alamance's standing in this case.

## B. Future Alamance Has Organizational Standing.

Organizations are subject to the same standing requirements as individuals: (1) injury; (2) causation; and (3) redressability. *Md. Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1250 (4th Cir. 1991). Contrary to Defendants' suggestion, each element is satisfied here.

The FAC alleges that Defendants impaired Future Alamance's ability to carry out its mission—a typical "injury in fact" to an organizational plaintiff. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). As alleged, Future Alamance is a "community organization . . . focused on creating an inclusive Alamance with equality for the entire community." FAC ¶ 4. The March to the Polls to promote police reform and voting rights aligned with this mission, and Future Alamance dedicated resources to it by "organiz[ing] . . . its members to participate in the March." *Id.* ¶¶ 4, 111. Defendants used force against Alamance community members—who had gathered in a show of unity in part due to the efforts and resources of Future Alamance—causing the March to end early. *See id.* These

4

actions directly interfered with Future Alamance's efforts to carry out its mission of "creating an inclusive Alamance" and promoting "equality for the entire community," *id.*, and plainly suffice to establish injury to Future Alamance. *Havens*, 455 U.S. at 379 (holding that "there can be no question that [an] organization has suffered injury in fact" where defendants' actions impaired the organization's ability to provide its services.).

Defendants' argument that there is no "causal connection between the alleged conduct and the alleged injury," Defs. Mot. at 6, also fails. As alleged, Defendants' use of force caused the March to end early, among other harms, thereby frustrating Future Alamance's mission. *See* FAC ¶¶ 4, 111. Defendants' allusion to unspecified "intervening misconduct of March participants leading to their alleged inability to vote," Defs. Mot. at 7, does not undermine this; "the causation element of standing does not require the challenged action to be the sole or even immediate cause of the injury." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018).

Defendants likewise offer no reason why Future Alamance's injury would not be redressed by a favorable decision. This Court is equipped to provide the declaratory and monetary relief for past harms sought by this action.[1]

### C.  Future Alamance Has Associational Standing.

An organization may sue on behalf of its members if (1) "at least one of its identified members would otherwise have standing to sue in their own right"; (2) "the interests at

---

[1] Defendants mistakenly assert that Plaintiffs seek injunctive relief, but the FAC requests only declaratory and monetary relief. *Compare* Defs.' Mot. at 9 *with* FAC at 39.

5

stake are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020).

Future Alamance satisfies all three prongs. Defendants do not dispute that at least one Future Alamance member would otherwise have standing. *See* Defs. Mot. at 8–9. Further, "the interests at stake" in this case are plainly "germane to [Future Alamance's] purpose," *Outdoor Amusement*, 983 F.3d at 683; as alleged, Future Alamance is a "community organization" whose work "is focused on creating an inclusive Alamance with equality for the entire community." FAC ¶ 4. The interests of marchers in protesting police violence and promoting racial justice and political participation are squarely within this purpose, and are implicated by the instant case.

Finally, that individual members of Future Alamance may need to participate in the litigation does not undermine Future Alamance's associational standing. Only a subset of Future Alamance's members attended the March, and only a sample of those attendees would need to provide evidence. This is plainly permissible under federal standing rules. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010) (associational standing where organization could produce "a sampling of evidence from its members"); *accord, e.g.*, *Am. Humanist Ass'n v. Maryland-Nat'l Capital Park & Planning Comm'n*, 874 F.3d 195, 204 (4th Cir. 2017), *rev'd and remanded on other grounds sub nom. Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067 (2019) (associational

standing where case would require participation by at least some members).

## II. PLAINTIFFS STATE FEDERAL CONSTITUTIONAL CLAIMS AGAINST ALAMANCE COUNTY.

Counties are liable under Section 1983 when someone with policymaking authority approves or ratifies unconstitutional acts. *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 2012). The FAC sufficiently alleges that Sheriff Johnson is a final policymaker for the County regarding law enforcement, such that his approval of the pepper spraying at the March may be imputed to the County. FAC ¶¶ 13, 154.

A final policymaker is someone "whose edicts or acts may fairly be said to represent official policy of the county." *Wilcoxson v. Buncombe County*, 129 F. Supp. 3d 308, 316 (W.D.N.C. 2014). A government official is a final policymaker if "no further action is needed for [his decisions] to take effect." *Liverman v. City of Petersburg*, 844 F.3d 400, 413 (4th Cir. 2003). Because this inquiry is fact-intensive, it is often inappropriate to resolve without discovery. *See Hunter v. Town of Mocksville*, 897 F.3d 538, 556 (4th Cir. 2018); s*ee also Estate of Bryant v. Baltimore Police Dep't*, No. 19-cv-384, 2020 WL 673571, at *36 (D. Md. Feb. 10, 2020). As set forth below, the FAC, read in concert with North Carolina law, plausibly alleges that Sheriff Johnson is a policymaker with respect to law enforcement for the County; at a minimum, he is a policymaker with respect to regulation of County property, including the courthouse where pepper spraying occurred. These allegations are more than sufficient.

## A. Sheriff Johnson is a Final Policymaker for the County with Respect to Law Enforcement Activities.

Plaintiffs allege that Defendant Johnson "is responsible for the policy, practice, implementation, and supervision, of all ACSO matters, including the . . . conduct of all ACSO personnel," and that he must "ensur[e] that ACSO personnel obey the laws of the United States and the State of North Carolina, including by conducting thorough and expeditious investigations into officer misconduct." FAC ¶ 10. The County, in turn, "through . . . Defendant Johnson, is responsible for the policy [and] practice . . . of all ACSO matters."[2] *Id.* ¶ 13.

State law confirms the plausibility of Plaintiffs' allegations. *See Wilcoxson*, 129 F. Supp. 3d at 316 (explaining that in determining whether sheriff is policymaker, "the Court turns to North Carolina law"). Under North Carolina law, only the county sheriff may set law enforcement policy. *See* N.C. Gen. Stat. § 162-24 ("The sheriff *may not* delegate . . . the final responsibility for discharging his official duties.") (emphasis added). Sheriffs, in turn, are part of the county structure under the State constitution. N.C. Const. Art. VII, § 1. County attorneys have the power to impeach sheriffs. N.C. Gen. Stat. § 12816. Each sheriff's office is funded by tax revenue from its respective county. N.C. Gen. Stat. §§ 153A-103, 153A-146, *et seq.* And sheriffs may establish county liability under other

---

[2] Contrary to Defendants' mischaracterization, *see* Defs. Mot. at 9, these allegations are not alleging *respondeat superior* liability—which would only depend on the existence of an employment relationship.

statutes. *See Boyd v. Robeson Cty.*, 169 N.C. App. 460, 468 (2005) (liability under State Tort Claims Act).

County sheriffs are thus final policymakers for the purpose of municipal liability under Section 1983. *See, e.g.*, *Wilcoxson*, 129 F. Supp. 3d at 317 (finding a North Carolina sheriff is "a county's chief law enforcement officer, and is the ultimate policymaker for the county regarding matters of law enforcement"); *Moran v. Polk Cty.*, No. 18-cv-300, 2019 WL 5297027, at *8 (W.D.N.C. Sept. 3, 2019), *report and recommendation adopted*, 2019 WL 4567548 (W.D.N.C. Sept. 20, 2019) (same).

### B. At Minimum, Sheriff Johnson is a Final Decisionmaker with Respect to the Regulation and Use of County Property.

ACSO's conduct here—using pepper spray to regulate access to the County's own property—further supports the inference that the County may be liable for Sheriff Johnson's decisions. North Carolina law dictates that the "board of commissioners shall supervise the maintenance, repair and use of county property." N.C. Gen. Stat. § 153A-169. Plaintiffs' allegations are sufficient to reasonably infer that the County delegated this authority to Sheriff Johnson. Plaintiffs allege that Sheriff Johnson was "acting within the scope of his employment" when he directed ACSO deputies to use pepper spray to clear the courthouse, which is County property. FAC ¶¶ 10, 54–56. ACSO deputies and Sheriff Johnson followed ACSO policy in clearing the courthouse. *Id.* ¶¶ 64–67. These allegations are strengthened by the County's own public documents, which give Sheriff Johnson the power to grant or deny permits for courthouse gatherings. *See* Alamance Cty. Historic Courthouse Facility Reservation Permit Application, available at

https://www.alamance-nc.com/sheriff/wp-content/uploads/sites/25/2020/08/Historic-Courthouse-Permit-Application-Packet.pdf (last accessed Mar. 23, 2021).[3]

Thus, even if the County may not be liable for every law enforcement policy set by Sheriff Johnson, it should, at a minimum, be liable for Sheriff Johnson's policies with respect to the regulation of County property.

## C. Defendants' Arguments to the Contrary Are Unavailing and Would Leave No Remedy for Unconstitutional Policing Policies.

Ignoring this authority, Defendants assert that because ACSO is its own legal entity, Sheriff Johnson cannot be a final policymaker for the County. Defs. Mot. at 10–11. But the Sheriff's Office's separate legal status is immaterial to determining its policymaking authority. *See Hogan v. Cherokee Cty.*, No. 18-cv-96, 2019 WL 2591089, at *6–*7 (W.D.N.C. Feb. 28, 2019) (rejecting argument that legally distinct department was unable to bind county for *Monell* purposes). Rather, the question is whether Sheriff Johnson's acts "may fairly be said to represent official policy of the county." *Wilcoxson*, 129 F. Supp. 3d at 316. Defendants themselves recognize that the Sheriff's Office is part of the County's organizational structure, possessing the same level of policymaking power as its Board of Commissioners. *See* Alamance Cty. Organizational Chart, available at https://www.alamance-nc.com/county-government/organizational-chart/ (last accessed Mar. 23, 2021). As discussed, Plaintiffs sufficiently pleaded that Sheriff Johnson's decisions concerning law enforcement represent County policy.

---

[3] As a public record, this document is judicially noticeable. *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Defendants also cite *Little v. Smith*, 114 F. Supp. 2d 437, 442 (W.D.N.C. 2000) to contend that sheriffs are, as a matter of law, unable to bind the counties they serve. But *Little* was decided on a motion for summary judgment, after parties were permitted discovery into the scope of one particular sheriff's authority. *Id.* at 442. Further, to the extent *Little* can be read to make a broader pronouncement about municipal liability, Plaintiffs submit that it was incorrectly decided.[4] The *Little* court did not address the complex statutory scheme governing sheriffs' authority in North Carolina counties. More fundamentally, to accept its reasoning would create a "nonsensical tautology." *Wilcoxson*, 129 F. Supp. at 315. Because sheriffs possess the exclusive authority to make county law enforcement policy, no other figure could be a policymaker for any county. N.C. Gen. Stat. § 162-24. And because "a sheriff's office is not a legal entity capable of being sued under 42 U.S.C. § 1983," *Fair v. Lincoln Cty.*, No. 20-cv-27, 2020 WL 2091071, at *2 (W.D.N.C. Apr. 29, 2020), no sheriff's office could be liable for an unconstitutional policy. Defendants' reading would thus leave no remedy for unconstitutional policing policies—an untenable result.

## III. NO IMMUNITY SHIELDS SHERIFF JOHNSON FROM PLAINTIFFS' STATE ASSAULT AND BATTERY CLAIM.

Plaintiffs allege that ACSO deputies unjustifiably deployed pepper spray during the

---

[4] Should this Court disagree, Plaintiffs respectfully request leave to amend the FAC to raise their claims for municipal liability against Sheriff Johnson. *See Finch v. Wilson Cty.*, No. 19-cv-550, 2020 WL 6532828, at *5 (E.D.N.C. Nov. 5, 2020) (allowing amendment to raise *Monell* claims against sheriff because complaint "plainly put[] the office of the [s]heriff on notice of a claim under *Monell*").

11

March and that Sheriff Johnson, as their employer, is liable under *respondeat superior*. FAC ¶ 10. Neither public official immunity nor governmental immunity protect him from this tortious conduct.

### A. Sheriff Johnson is Not Entitled to Immunity in His Personal Capacity.

Plaintiffs need only plausibly allege that Defendant Johnson acted outside the scope of his official authority, with malice, or corruptly, to overcome public official immunity. *Bartley v. City of High Point*, 846 S.E.2d 750, 754 (N.C. Ct. App. 2020). The FAC proffers specific allegations that Sheriff Johnson was informed of his officers' first misuse of pepper spray pursuant to ACSO policy, and authorized them to continue their assault and battery against March participants, including Plaintiffs, also pursuant to ACSO policy. FAC ¶¶ 64–66. Far from being "unspecific and wholly unsupported," Defs. Mot. at 16, this conduct is squarely the type for which officers may be individually liable, *see, e.g.*, *Roberts v. Swain*, 126 N.C. App. 712, 717 (1997) (denying summary judgement on assault and battery where issues of fact remained as to whether defendant officers exceeded scope of duties by pepper spraying plaintiff). That Defendant Johnson was acting in his capacity as Sheriff is no defense. Plaintiffs allege that Defendant Johnson directed officers in conduct that was "without justification" and constituted "excessive force"—which, taken as true, was "outside of and beyond the scope of [their] duties." *Smith v. State*, 289 N.C. 303, 331 (1976); *accord Lopp v. Anderson*, 251 N.C. App. 161, 172 (2016).

12

## B. Sheriff Johnson Has Waived Governmental Immunity in His Official Capacity, and Plaintiffs Should Be Permitted to Amend.

Defendants concede that Sheriff Johnson has purchased insurance, waiving governmental immunity for claims brought against him in his official capacity. Defs. Mot. 12–14. Yet they seek to dismiss claims against Sheriff Johnson based on Plaintiffs' failure to name the surety as a party—the existence of which not disclosed to Plaintiffs until Defendants' Motion. Should this Court dismiss the official capacity claims against Sheriff Johnson on this basis, Plaintiffs would respectfully request leave to amend their complaint to name the surety as a party. *See Hines v. Johnson*, No. 19-cv-515, 2021 WL 468972, at *4 (M.D.N.C. Feb. 9, 2021) (allowing amendment to add sheriff's surety as a party).

## IV. PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS ARE WELL-PLEADED.

The North Carolina Constitution provides a direct cause of action against a state official for violations of its protections if there is no adequate state law remedy. *See Corum v. Univ. of N. Carolina*, 330 N.C. 761, 783 (1992). In determining whether an adequate state law remedy exists, courts consider whether a plaintiff can sue "for the *same injury* alleged in the direct constitutional claim." *Taylor v. Wake Cty.*, 258 N.C. App. 178, 188 (2018) (quoting *Estate of Fennell ex rel. Fennell v. Stephenson*, 137 N.C. App. 430, 437 (2000)).

Defendants' discharge of pepper spray prevented Plaintiffs from engaging in expressive, political speech, even preventing some Plaintiffs from registering to vote and voting. This political silencing cannot be remedied through any other state claims.

13

Contrary to Defendants' assertions, Defs. Mot. at 17, common law assault and battery may remedy Plaintiffs for their *physical* injuries, but it provides no remedy for their separate dignitary harms and emotional distress for lost opportunities to engage in constitutionally protected speech and peaceful assembly. *See Corum*, 330 N.C. at 783 ("[O]ur common law guarantees plaintiff a direct action under the State Constitution for alleged violations of his constitutional freedom of speech rights."). Nor can Defendants rely on Plaintiffs' federal constitutional claims: only an "adequate *state* remedy" can preclude a direct cause of action under the state constitution. *Id.* (emphasis added).

## V. PLAINTIFFS' FEDERAL CLAIMS ARE ADEQUATELY ALLEGED.

The FAC amply pleads that Defendants' conduct violated federal statutes and constitutional safeguards protecting plaintiffs' rights to vote, assemble, and be free from excessive force. Defendants' cursory contentions about failure to state a claim and qualified immunity have no merit.

### A. Plaintiffs Adequately Allege Violation of Section 11(b) of the Voting Rights Act.

Section 11(b) of the Voting Rights Act ("VRA") prohibits conduct that "intimidate[s], "threaten[s]," or "coerce[s]" someone who is "voting," "attempting to vote," or "urging or aiding any person to vote or attempt to vote." 52 U.S.C. § 10307(b). As its drafters intended, "Section 11(b)'s reach is extensive, in accordance with the VRA's ambitious aims of encouraging true enforcement of the Fifteenth Amendment's promise of unencumbered access to the vote, regardless of race." *Nat'l Coal. on Black Civic Participation v. Wohl* ("*NCBCP*"), No. 20-cv-8668, 2020 WL 6305325, at \*12 (S.D.N.Y.

Oct. 28, 2020). The FAC pleads a straightforward Section 11(b) violation: that Defendants' use of excessive force on Plaintiffs during the March intimidated them and prevented them from registering to vote and/or voting. *See, e.g.*, FAC ¶¶ 74, 88, 145. Defendants' attempt to dismiss this claim has no merit.

        1.    *Defendants' Alleged Conduct Is Squarely Within the Meaning of "Intimidation" Under Section 11(b).*

As confirmed by decades of precedent, violence against peaceful protestors and would-be voters—as here—is perhaps the most fundamental form of conduct proscribed by Section 11(b). *See, e.g.*, *NCBCP*, 2020 WL 6305325, at *16 ("Conduct that puts others 'in fear of harassment and interference with their right to vote' naturally includes egregious conduct, such as acts of violence.") (quoting *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Int. Legal Found.* ("*LULAC*"), 18-cv-423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018)). Accordingly, violence against individuals "participating in a march . . . to protest denial of equal rights" has long constituted actionable voter intimidation. *Katzenbach v. Original Knights of Ku Klux Klan*, 250 F. Supp. 330, 341 (E.D. La. 1965) (applying Section 11(b)'s predecessor statute, 52 U.S.C. § 10101(b) ("Section 131(b)")).

Defendants ignore this authority, baselessly asserting that "[p]laintiffs . . . cannot establish that the alleged acts of Defendants were acts of intimidation or attempts to intimidate or any other acts proscribed in 52 U.S.C. § 10307(b)." Defs. Mot. at 18. But courts have sustained Section 11(b) claims in less egregious cases than the overt violence at issue here. *See, e.g.*, *LULAC*, 2018 WL 3848404, at *4 (denying motion to dismiss

Section 11(b) claim for report falsely identifying individuals as being fraudulently registered to vote); *NCBCP*, 2020 WL 6305325, at *18 (ruling that plaintiffs had shown a likelihood of success on their Section 11(b) claim challenging robocalls to potential voters threatening forced vaccinations and other adverse consequences for voting by mail); *United States v. McLeod*, 385 F.2d 734, 740–41 (5th Cir. 1967) (applying Section 131(b) to "baseless arrests and prosecutions" at a voter registration drive).

Also meritless is Defendants' unsupported statement that there is "no causal link between the alleged conduct and the claimed or perceived harms alleged by the Plaintiffs." Defs. Mot. at 18. Section 11(b) has no special causality requirement, and requires only that Plaintiffs "allege . . . that [Defendants' conduct] put them in fear of harassment and interference with their right to vote." *LULAC*, 2018 WL 3848404, at *4; *accord Katzenbach*, 250 F. Supp. 330 at 353 (explaining that Section 131(b) "may be extended against interference with any activity having a rational relationship with the federal political process"). The FAC plainly meets this standard, alleging, *inter alia*, that Defendants "discharged pepper spray" at Plaintiffs who had intended to vote and/or register to vote after the March, thereby preventing them from doing so and making them "fearful of attempting to vote on Election Day." FAC ¶¶ 140, 145. This is more than sufficient to state a claim.

2.     *Section 11(b) Has No Intent Requirement—and the FAC Pleads Intent Regardless.*

Defendants also argue that "Plaintiffs cannot show that Defendants intended to interfere with Plaintiffs' right to vote." Defs. Mot. at 18. But Congress expressly drafted

16

Section 11(b) to exclude any intent requirement.  Its predecessor statute, Section 131(b), required that conduct be undertaken "for the purpose of interfering with the right to vote." 52 U.S.C. § 10101(b).  By contrast, Section 11(b)—which borrowed much of its language from Section 131(b)—critically omitted the "for the purpose of" clause or any similar language.  *See* 52 U.S.C. § 10307(b).  The legislative history confirms that this was intentional:  as Attorney General Nicholas Katzenbach testified before Congress, "[u]nlike [Section 131(b)]," under Section 11(b), "no subjective purpose or intent need be shown." H.R. Rep. No. 89-439 at 30 (1965).  Instead, "defendants would be deemed to intend the natural consequences of their acts."  Voting Rights, Part 1:  Hearings on S. 1564 Before the S. Comm. on the Judiciary, 89th Cong. 16 (1965).

Numerous courts have read, and applied, this statute the same way.  *See, e.g.*, *LULAC*, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) ("[I]n the absence of plain statutory text, statutory history, or binding case law to the contrary, the Court does not find that a showing of specific intent . . . is required under § 11(b)."); *Daschle v. Thune*, ECF No. 6, No. 04-civ-4177 (D.S.D. Nov. 1, 2004) (noting that "[w]hether the intimidation was intended or simply the result of excessive zeal is not the issue [for a Section 11(b) claim]").

Instead of acknowledging this authority, Defendants cite just two non-binding cases that did not directly consider the issue.  *Olagues v. Ruossoniello*, 770 F.2d 791, 804 (9th Cir. 1985), affirmed the dismissal of the plaintiffs' Section 131(b) and Section 11(b) claims because plaintiffs failed to raise a material issue of fact as to whether government officials did in fact intend to intimidate—but in doing so, did not distinguish Section 11(b) from

17

Section 131(b), let alone their differing intent requirements discussed above. Moreover, *Olagues* relied wholly on another case (*McLeod*), which was filed before Section 11(b)'s enactment and thus dealt exclusively with Section 131(b). *See id.* (citing *McLeod*, 385 F.2d at 740–41). Defendants' invocation of *Parson v. Alcorn*, 157 F. Supp. 3d 479 (E.D. Va. 2016), is similarly unavailing. *Parson* relied on *Olagues* and *McLeod*—and rather than considering the textual differences between Section 11(b) and Section 131(b), cited both cases as arising under the "predecessor statute" of Section 131(b) alone. 157 F. Supp. 3d at 498; *see LULAC*, 2018 WL 3848404, at *4 ("Defendants' reference to nonbinding case law that reads specific intent . . . requirements into § 11(b) is also unpersuasive. These cases trace back to *United States v. McLeod*, which, in fact, adjudicated claims brought under [Section 131(b)].").

In any event, the FAC amply pleads that Defendants intended their intimidation. The FAC alleges that "[b]y using pepper spray on Plaintiffs without justification," Defendants "intentionally caused bodily contact with Plaintiffs." FAC ¶ 196. The FAC also contains allegations that Defendants were on notice about the purposes of the March before using force. It was a highly publicized "March to the Polls," *id.* at 4, ¶ 81 n.5, which was organized "to encourage people to go to the polls," *id.* ¶ 41, took place on North Carolina's last day of early voting and voter registration, *id.* ¶¶ 86–87, and was to culminate near a polling place so that attendees could register to vote and/or vote, *id.* ¶¶ 42–43. In short, while subjective intent is not required under Section 11(b), the facts alleged more than establish such intent.

18

**B.      Plaintiffs Adequately Allege First Amendment Retaliation.**

Plaintiffs need allege only three elements to state a First Amendment retaliation claim:  (1) they participated in protected First Amendment activity; (2) Defendants took adverse action; and (3) a causal relationship exists between the protected activity and Defendants' conduct.  *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).  Defendants do not dispute that Plaintiffs' peaceful marching constituted protected activity, nor do they contest that the use of pepper spray constitutes "adverse action" under this Circuit's law.  *See* Defs. Mot. at 19–20.  Rather, Defendants argue only that there is an insufficient causal relationship between Plaintiffs' protected political speech and Defendants' decision to pepper spray them.  *Id.*  That argument is unfounded.

Courts may "infer causation based on the facts," including temporal proximity between the protected conduct and adverse action was.  *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013).  That Defendants deployed pepper spray minutes after protestors kneeled to protest police violence supports an inference of causality.  FAC ¶ 158.  That inference is strengthened by additional allegations that ACSO deputies cleared white supremacist counter-protesters from the area without force, even though they were engaged in the same type of activity, but espousing a different message.  *Id.* ¶¶ 51–53.

Defendants overstate the burden required to allege a claim for First Amendment retaliation.  Relying on *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), Defendants assert that all First Amendment retaliation claims require showing that the plaintiff's protected speech was the *only* motivation for the adverse action.  Defs. Mot. at 19–20.  Defendants misread

*Nieves* in two ways. *First*, *Nieves* established a heightened threshold only for retaliatory arrest and prosecution claims, which have "causal complexities" not present in this case. 139 S. Ct. at 1722–23. *Nieves* explained that retaliatory arrest claims require a higher showing because when an officer makes an arrest, "protected speech is often a 'wholly legitimate consideration.'" *Id.* at 1724 (internal quotation omitted). This heightened standard has no applicability to a retaliatory use of force claim as here. *See Freed v. Herndon*, No. 19-cv-599, 2020 WL 5816497, at *7 (D. Md. Sept. 29, 2020).

*Second*, *Nieves* provides that the heightened standard for retaliatory arrest claims does not apply where a plaintiff presents "objective evidence" that she was the target of retaliatory action when "otherwise similarly situated individuals not engaged in the same sort of protected speech" were not targeted. 139 S. Ct. at 1727. Again, that is exactly what Plaintiffs have alleged. FAC ¶¶ 51–53.

### C. Plaintiffs Adequately Allege Fourth Amendment Excessive Force.

Excessive force claims turn on whether a use of force was reasonable in light of the totality of the circumstances, including "'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or others,' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Defendants neither identify any deficiencies in Plaintiffs' allegations, nor contend that any factor weighs against Plaintiffs. *See* Defs. Mot. at 20–21. Indeed, all three factors weigh in Plaintiffs' favor.

20

For all of the Plaintiffs, *no* crime was at issue at the time of any pepper spraying. Only one Plaintiff, Olivia Davis, was charged with a misdemeanor after the *third* round of pepper spray (based on her "question[ing]" of officers who attempted to move her and her partner out of the road despite her explanation that "they were just trying to get away from the pepper spray"). FAC ¶¶ 114–15, 118. This factor thus "clearly weigh[s]" in Plaintiffs' favor. *Jones*, 325 F.3d at 528 (use of force against someone not suspected of or charged with crime, or only suspected of "a minor one," constituted excessive force).

Further, no Plaintiff was violent, threatened violence, attempted to "evade arrest by flight," or otherwise posed any danger to anyone. FAC ¶¶ 48, 117; *see generally id.* ¶¶ 98–129. Again, these factors weigh in Plaintiffs' favor and suffice to state a claim.

### D. Plaintiffs Adequately Allege Violation of Section 1985(3) of the KKK Act.

The FAC also adequately alleges a violation of Section 1985(3) of the KKK Act, which provides a cause of action "if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote" from voting. 42 U.S.C. § 1985(3). Defendants contend that Plaintiffs fail to adequately allege an express agreement. Defs. Mot. at 21–22. But again, Defendants ignore the FAC, which contains numerous allegations regarding the agreement between Sheriff Johnson, ACSO deputies, and GPD officers to use pepper spray and prevent Plaintiffs from registering to vote and/or voting. *See, e.g.*, FAC ¶ 60 ("GPD police officers and ACSO deputies . . . were communicating with each other to coordinate a plan for dispersing the crowd."), *id.* ¶¶ 64–67 (alleging that Sheriff Johnson was made aware of situation and directed the further use

21

of pepper spray), *id.* ¶ 70 ("GPD and ACSO officers . . . communicated with each other and decided to use pepper spray again."), *id.* ¶ 189 (alleging that pepper spray and communications with senior officials were part of larger coordinated plan).

### E. Qualified Immunity Is Unavailable.

"Ordinarily, the question of qualified immunity should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). Qualified immunity is inappropriate where its resolution "turn[s] on disputed facts." *Raub v. Bowe*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013). For this reason alone, Defendants' efforts to invoke qualified immunity at this stage should be rejected.

Even if qualified immunity were not premature, the defense would fail. Since at least 2012, it has been clearly established pepper spraying peaceful and compliant protestors violates the Fourth Amendment, *Ewing*, 481 F. App'x 802, 803 (4th Cir. 2012) rendering qualified immunity inappropriate. *See, e.g.*, *Cooper v. Nichols*, No. 17-cv-466, 2019 WL 418856, at *4 (E.D. Va. Feb. 1, 2019) (denying qualified immunity to officer who allegedly used OC spray on peaceful inmate). It is likewise clearly established that officers who exercise their authority in retaliation for protected conduct violate the First Amendment. *Tobey*, 706 F.3d at 389 (denying qualified immunity to officers who arrested plaintiff in retaliation for peaceful protest). District courts thus regularly deny qualified immunity where officers exercised their authority at least partially because of plaintiffs' protected conduct. *See Raub*, 960 F. Supp. 2d at 614; *Lowe v. Spears*, No. 06-cv-0647, 2007 WL 9718279, at *5 (S.D. W.Va. May 4, 2007).

22

Defendants also contend, without any authority, "that qualified immunity applies to Plaintiff's [sic] claims brought pursuant to 52 U.S.C. § 10307 and 42 U.S.C. § 1985(3)." Defs. Mot. at 22. The Court should reject this unfounded argument: qualified immunity is a doctrine specific to the text of 42 U.S.C. § 1983, and thus has no applicability to these other statutory claims.

## VI. PLAINTIFFS ADEQUATELY PLEADED THEIR PUNITIVE DAMAGES REQUEST.

Plaintiffs do not bring a standalone claim for punitive damages; Defendants' motion to dismiss Plaintiffs' request for punitive damages should be denied on this basis alone. *See, e.g.*, *Davis v. G. Allen Equip. Corp.*, No. 20-cv-49, 2020 WL 4451169, at *2 (E.D.N.C. Aug. 3, 2020) ("Because the Court does not consider plaintiff's request for punitive damages to be a separate cause of action, dismissal is not warranted at this time[.]").

In any event, Plaintiffs have adequately pleaded "egregious and wrongful acts" that would support punitive damages against Sheriff Johnson and Alamance County deputy sheriffs. N.C. Gen. Stat. § 1D-1. It is "well established that a defendant may be liable for punitive damages where his conduct reaches a level higher than mere negligence and amounts to willful, wanton, malicious, or reckless indifference to foreseeable consequences." *Thompson v. Town of Dallas*, 142 N.C. App. 651, 656 (2001) (citation omitted); *accord Quarles v. Weeks*, No. 16-cv-304, 2017 WL 9513018, at *7 (W.D.N.C. July 6, 2017) (sustaining punitive damages request based on allegations that defendant "acted with intentional disregard to Plaintiff's Fourth Amendment rights, which Defendant knew or should have known would result in injury").

23

Plaintiffs allege that Defendants discharged pepper spray—three separate times—"indiscriminately into a crowd of peaceful marchers" that included children as young as three, elderly individuals, and individuals with disabilities, causing significant injuries. *Id.* ¶¶ 62, 130. They allege Defendants provided inadequate warning, then prevented medical professionals from assisting those injured. *Id.* ¶¶ 62, 79. These allegations are plainly sufficient to show, at a minimum, reckless disregard for the injuries Defendants caused.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion for Judgment on the Pleadings be denied in full.

Dated: March 23, 2021

/s/ Marianne Spencer
Marianne Spencer*
mspencer@cov.com
Covington & Burling LLP
850 Tenth Street, N.W.
Washington, DC 20001
Tel.: (202) 662-6000

Leah Aden*
laden@naacpldf.org
Natasha Merle*
nmerle@naacpldf.org
Anuja D. Thatte*
athatte@naacpldf.org
Ashok Chandran*
achandran@naacpldf.org
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10031
Tel.: (212) 965-2200

*Notice of Special Appearance Filed

Respectfully submitted,

/s/ Geraldine Sumter
Geraldine Sumter
North Carolina Bar No. 11107
gsumter@fergusonsumter.com
Ferguson Chambers & Sumter, P.A.
309 East Morehead Street, Suite 110
Charlotte, NC 28202
Tel.: (704) 375-8461

C. William Phillips*
cphillips@cov.com
Covington & Burling LLP
620 8th Avenue
New York, NY 10018
Tel.: (212) 841-1081

Morgan Lewis*
melewis@cov.com
Covington & Burling LLP
415 Mission Street
San Francisco, CA 94105
(415) 591-6000

*Attorneys for Allen Plaintiffs*

25

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document complies with the word count limitations of L.R. 7.3(d)(1). This document contains 6,168 words excluding the cover page, caption, signature lines, certificates of service and word count, and indices.

Dated: March 23, 2021                       /s/ Geraldine Sumter
                                             Geraldine Sumter

                                             *Attorney for Allen Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 23, 2021, I caused the foregoing *ALLEN* PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ALAMANCE COUNTY AND TERRY S. JOHNSON'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 51) to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.


Dated:  March 23, 2021                                 /s/ Geraldine Sumter
                                                                 Geraldine Sumter

                                                                 *Attorney for Allen Plaintiffs*