IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SYLVESTER ALLEN, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:20-CV-997 |
| | ) | |
| CITY OF GRAHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| --------------------------------- | ) | |
| GREGORY DRUMWRIGHT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:20-CV-998 |
| | ) | |
| TERRY JOHNSON, individually and | ) | |
| in his official capacity as Alamance | ) | |
| County Sheriff, et al., | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

These consolidated cases arise out of a political demonstration held on October 31, 2020, in Graham, North Carolina. The plaintiffs allege that the defendants—the City and various City and County law enforcement officers—used pepper spray and overly violent crowd-control tactics to disrupt a peaceful protest and prevent the plaintiffs and others from voting, violating numerous federal and state rights in the process.

After the defendants moved to dismiss, the *Allen* parties resolved their disputes, subject to certain conditions, and the Court has stayed that case. *See* Docs. 73, 76. This

order resolves the motions to dismiss in the companion case, *Drumwright v. Cole*, 1:20-cv-998 (M.D.N.C.).[1]

The Court concludes that the *Drumwright* complaint states claims on which relief may be granted, except for the federal constitutional claims against the named City defendants in their official capacities. Those claims will be dismissed as redundant. Otherwise, the motions to dismiss will be denied.

## I.    The Parties and the Causes of Action

The *Drumwright* plaintiffs include several individuals and two unincorporated entities. The individuals are Reverend Gregory Drumwright, Edith Ann Jones, Faith Cook, Janet Nesbitt, Quenclyn Ellison, Melanie Mitchell, Ernestine Lewis Ward, Edith Ward, Avery Harvey, and Ashley Reed Batten. Ms. Ellison and Ms. Mitchell bring claims on behalf of themselves and their minor children. The entities are Justice 4 The Next Generation and Alamance Alliance 4 Justice.

The amended complaint identifies seven causes of action. As named in the heading for each cause of action, they are:

1.    "Violation of the First Amendment" under 42 U.S.C. § 1983;[2]

2.    "Violation of the Fourth Amendment" under 42 U.S.C. § 1983;[3]

---

[1] Because all relevant pleadings and briefs have been filed in *Alle*n *v. City of Graham*, 1:20-cv-997 (M.D.N.C.), the lead case, *see* Doc. 22 (granting motion to consolidate), the Court will use citations to the *Allen* docket.

[2] Doc. 25 at ¶¶ 175–78.

[3] Doc. 25 at ¶¶ 179–82.

3. "Violation of Section 11(b) of the Voting Rights Act" under 52 U.S.C. § 10307;[4]

4. "Ku Klux Klan Act of 1871" under 42 U.S.C. § 1985(3);[5]

5. "Violation of Article I, Section 14 of the North Carolina Constitution;"[6]

6. "Violation of Article I, Section 12 of the North Carolina Constitution;"[7]

7. "Common Law Assault and Battery/Excessive Force."[8]

In addition to the City of Graham, the plaintiffs bring claims against several named law enforcement officers as well as unidentified law enforcement "Doe" defendants. The defendants can usefully be divided into two groups: the City defendants and the County defendants.

The City defendants are the City of Graham; Mary Kristine Cole, individually and in her official capacity as Chief of the Graham Police Department; Joaquin Velez, individually and in his official capacity as Lieutenant of the Patrol Division of the GPD; Jonathan Franks, individually and in his official capacity as consultant to the Alamance County Sheriff and the Graham Police Chief; and John and Jane Does, presently unknown officers of the GPD.

---

[4] Doc. 25 at ¶¶ 183–88.

[5] Doc. 25 at ¶¶ 189–99.

[6] Doc. 25 at ¶¶ 200–05.

[7] Doc. 25 at ¶¶ 206–10.

[8] Doc. 25 at ¶¶ 211–13.

The County defendants are Terry Johnson, individually and in his official capacity as Alamance County Sheriff; Cliff Parker, individually and in his official capacity as Alamance County Chief Deputy Sheriff; and John and Jane Does, presently unknown officers of the Alamance County Sheriff's Office.

## II.    Procedural Posture

Before settling with the *Allen* plaintiffs, the City defendants filed a single motion to dismiss directed at both the *Allen* and the *Drumright* complaints.  Doc. 45.  The County defendants filed separate dispositive motions directed towards each complaint. *See* Docs. 50 (directed at *Allen*), 52 (directed at *Drumwright*).  The motions as to the complaint in *Allen* will be held in abeyance pending finalization of the settlement.

The pending motions to dismiss the *Drumright* complaint cite both Federal Rules of Civil Procedure 12(b) and 12(c).  Doc. 45 at 1; Doc. 52 at 1.  The briefing addresses only Rule 12(b)(6).  The Court will assess the standing issues under the standards applicable to a Rule 12(b)(1) motion and the remaining issues under the standards applicable to a Rule 12(b)(6) motion.[9]

## III.    The Facts as Alleged

On the final day of early voting and voter registration for the 2020 general election in North Carolina, the individual defendants and other officers pepper-sprayed the

---

[9] Technically, challenges to standing are made pursuant to Rule 12(b)(1), not Rule 12(b)(6) or 12(c).  *See Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court recharacterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)).  The Court will treat this aspect of the motions as if made pursuant to Rule 12(b)(1), given its independent duty to evaluate subject matter jurisdiction.

4

plaintiffs while they were participating in the "I am Change March to the Polls," in the city of Graham. Doc. 25 at ¶ 1. The March was organized as a peaceful "march to the polls" that was "focused on racial justice issues," like raising awareness of police brutality, and it was intended to encourage members of the community who had not already voted to do so. *Id*. at ¶¶ 9–12, 68.

The March began at a local church and was scheduled to stop at Court Square, near the Confederate monument in front of the Alamance County courthouse where the organizers planned to speak from a small stage with sound amplifiers. *Id*. at ¶¶ 72, 88. Organizers then planned for the March to continue towards the Elm Street polling place, an early-voting site where attendees could register and vote in the 2020 general election. *Id*. at ¶¶ 9, 72, 80. The organizers had a permit for the March and rally, *id*. at ¶¶ 71–72, 75, 91, and a county attorney authorized the plaintiffs to erect a small stage on courthouse grounds. *Id*. at ¶ 82.

The March began and proceeded peacefully. *Id*. at ¶¶ 1, 88. The marchers complied with COVID-19 protocols. *Id*. at ¶¶ 86, 95. When the marchers arrived at Court Square, they were met by armed sheriff's deputies. *Id*. at ¶ 96. Counter-protestors were also present but left upon instruction from officers soon after the marchers arrived. *Id*. at ¶ 145.

Marchers knelt in silence for 8 minutes and 46 seconds in remembrance of George Floyd, who was killed by police a few months earlier. *Id*. at ¶ 95. Immediately after the remembrance, and before many could even get back up to their feet, officers began indiscriminately discharging pepper spray into the crowd, which included children, the

5

elderly, and those with disabilities. *Id*. at ¶¶ 1, 99–109. The chemical spray irritated and burned the eyes and throats of some plaintiffs. *See, e.g.*, *id*. at ¶¶ 101–08. Some March participants who were in a nearby park attempted to cross over to the courthouse grounds but were stopped and arrested by GPD officers. *Id*. at ¶ 110.

Despite the pepper spray, the rally continued, and Rev. Drumwright was able to set up the stage and a sound system. *Id*. at ¶¶ 99, 111. After several speakers had spoken, deputies attempted to disconnect the sound system without warning or explanation. *Id*. at ¶¶ 114–15. Shortly after that, Graham police officers and Alamance County deputy sheriffs worked in coordination to pepper spray the marchers a second time. *Id*. at ¶ 116. Several of the named plaintiffs and members of Alamance Alliance and Next Generation were hit by the second spray. *Id*. at ¶¶ 116–22.

GPD and ACSO officers ordered the marchers to leave the area. *Id*. at ¶ 123. Without providing time to disperse or instruction on where or how to leave the area, the officers began spraying a third round of pepper spray into the crowd. *Id*. at ¶ 124. Several of the named plaintiffs and members of Alamance Alliance and Next Generation were also hit by this third round of pepper spray. *Id*. at ¶ 126.

Some of the marchers continued to the Elm Street polling place as planned but took a longer route to avoid officers. *Id*. at ¶¶ 132–33. Many marchers who had intended to vote that day were unable to because of injuries from the defendants' pepper spray. *Id*. at ¶¶ 25, 144, 147. Members of Next Generation and Alamance Alliance, who were lawfully registered voters in Alamance County, were intimidated from voting by the

defendants' actions.  *Id*. at ¶¶ 152–53.  Multiple individual plaintiffs were fearful of attempting to vote on Election Day, three days after the March.  *Id*. at ¶¶ 150–51.

Other factual allegations will be recited as necessary to address specific issues.

## IV.  The § 1983 Claims Against the Individual City Defendants in Their Official Capacities

The City defendants contend that because the plaintiffs bring their claims against the City, the same claims against the individual City defendants in their official capacity are redundant and should be dismissed.  Doc. 46 at 17–18; *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (treating an official capacity suit "as a suit against the entity"); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (upholding dismissal of official-capacity claims under § 1983 as redundant).  The plaintiffs acknowledge the City defendants' argument but do not address it.  Doc. 56 at 13.

The cases cited by the City defendants support dismissal of the § 1983 claims against the individual City defendants in their official capacities.  Those claims are redundant to the § 1983 claims against the City and will be dismissed.

The City does not explicitly contend that any state claims or federal statutory claims are redundant, nor does it cite any cases addressing anything other than § 1983 claims.  *See infra* note 12.  To the extent the motion is directed to any state or federal statutory claims, it will be denied without prejudice.

## V.  Entity Standing

Both the County and City defendants challenge the standing of entity-plaintiffs Alamance Alliance and Next Generation.  Doc. 46 at 19; Doc. 53 at 5.  The defendants

7

assert that these unincorporated associations cannot bring suit in North Carolina because they have not filed an assumed business name certification as required by N.C. Gen. Stat. § 1-69.1(a)(3). Doc. 46 at 20; Doc. 53 at 5–6. But "standing to sue in any Article III court is a federal question which does not depend on the party's standing in state court." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 219 (4th Cir. 2020) (cleaned up); *see also Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) (stating that state law "obviously cannot alter the scope of the federal judicial power.").

The County and City defendants also contend that the entity plaintiffs have not established Article III standing. Article III standing is a subject matter jurisdiction issue. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 715 (4th Cir. 2015).

While the plaintiffs bear the burden of clearly alleging facts "demonstrating that [they are] proper part[ies] to invoke judicial resolution of the dispute," *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), the district court should dismiss a case on the pleadings for lack of subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (cleaned up). When a party moves to dismiss on the basis that a complaint fails to allege facts supporting the Court's subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). And where, as here, a defendant has not provided evidence to dispute the veracity of the

8

jurisdictional allegations in the complaint, courts accept facts alleged in the complaint as true. *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009).

Unincorporated organizations, like the entity plaintiffs here, may satisfy Article III standing in one of two ways. They may show organizational standing to sue on their own behalf, or they may show associational standing to sue on behalf of one or more of their members. *Guilford Coll. v. McAleenan*, 389 F. Supp. 3d 377, 388 (M.D.N.C. 2019). Both plaintiff organizations have made a facial showing of Article III standing to pursue their claims.

First, both entities have organizational standing because the allegations make a facial showing that the actions by the City and County defendants impeded their efforts to carry out their organizational missions and purposes. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding "there can be no question that [an] organization has suffered injury in fact" where defendants' actions impaired the organization's ability to provide its services). Next Generation is an unincorporated association of community organizations that promotes social justice and an end to police violence and other forms of systemic racial oppression. Doc. 25 at ¶ 9. Alamance Alliance is an unincorporated organization of Alamance community leaders, parents, and youth with a mission of, among other things, fighting against racism, injustice, and oppression and promoting social equality in Alamance County. *Id.* at ¶ 11. Both organizations allege that they dedicated time and resources to help organize the March and to encourage their members to participate as a means of furthering their organizational goals. *Id.* at ¶¶ 10, 12. The defendants' conduct forced the March to end early and directly interfered with each

9

group's mission.  The entity plaintiffs do not have to prove their injuries in the complaint, and they have sufficiently alleged that they were injured by the defendants' conduct.  The County defendants' *Lujan* contention that the plaintiffs' injuries are unlikely to be redressed by a favorable decision is conclusory at best.[10]  *See* Doc. 53 at 8; *see also Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992) (establishing standing requirements of injury, traceability, and redressability).

Second, both organizations have also made a facial showing of associational standing.  An organization has associational standing to sue on behalf of its members if: (1) "at least one of its identified members would otherwise have standing to sue in their own right;" (2) "the interests at stake are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020) (cleaned up).

As to the first element, the complaint alleges that Alamance Alliance President Quenclyn Ellison, Doc. 25 at ¶ 15, and Next Generation's lead organizer, Gregory Drumright, *id.* at ¶ 13, were harmed by the defendants, along with many other unnamed members of each organization.  *Id.* at ¶¶ 152–53.  The County defendants contend that Next Generation is an unincorporated association of community organizations and does

---

[10] In their brief, the County defendants assert that the plaintiffs must seek relief, which, if granted, will benefit the injured members of the association.  Doc. 53 at 8–9 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).  But they do not clearly contend that this requirement has not been met here.  The Court will not address this issue, if it is one, on the undeveloped factual record.

10

not represent the constitutional rights of individuals. Doc. 53 at 8. The injury to Rev. Drumwright is sufficient to facially satisfy the first element of representational standing.

As to the second element, the interests at stake are germane to each group's organizational purpose. These interests include the freedom to peacefully protest police violence and racial justice and the freedom to participate in political demonstrations, like the March and other similar get-out-the-vote drives. These interests are within Alamance Alliance's mission of "fight[ing] for political, educational, social, and economic equality for all citizens of Alamance County," Doc. 25 at ¶ 11, and Next Generation's organizational purpose of ending "police violence and other forms of systemic racial oppression." *Id*. at ¶ 9. Each organization seeks to promote their mission by organizing and leading public demonstrations like the March and similar vote drives. *Id*. at ¶¶ 9, 11.

As to the third element, the claims asserted and the relief requested will not require evidence and testimony from all individual association members. At most, the litigation will require evidence and testimony from a representative sample of organization members who attended the March. Many courts have found that limited participation by individual members does not defeat associational standing. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010) (approving associational standing where organization could produce "a sampling of evidence from its members"); *accord, e.g.*, *Am. Humanist Ass'n v. Maryland-Nat'l Capital Park & Planning Comm'n*, 874 F.3d 195, 204 (4th Cir. 2017), *rev'd and remanded on other grounds sub nom. Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067

(2019) (granting associational standing where case would require testimony and participation by at least some members).

The City defendants contend that organizations do not have standing to assert the rights of their members in § 1983 cases, relying on authority from the Second Circuit. *See* Doc. 46 at 20. First, as discussed *supra*, the entity plaintiffs have asserted their own injuries. Second, as to associational standing, other circuits disagree with the Second Circuit, *see Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 123 (2d Cir. 2017) (Jacobs, J., dissenting and collecting cases), and the Fourth Circuit has applied associational standing rules in § 1983 cases. *See, e.g.*, *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991).

Alamance Alliance and Next Generation have facially alleged organizational and associational standing to pursue their asserted claims. The motions to dismiss for lack of standing and subject matter jurisdiction will be denied. As standing "remains open to review at all stages of the litigation," *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994), this denial is without prejudice to a summary judgment motion.

## VI.     Sufficiency of the Allegations

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*

12

### A. The Common Law Assault and Battery Claim

In Count VII, the plaintiffs assert a common law assault and battery claim against 40 unnamed John and Jane Does of the GPD and the ACSO in their individual capacities. Doc. 25 at ¶¶ 211–13. The plaintiffs do not assert this claim against any of the named defendants.

The County defendants appear to misapprehend this fact, as they contend that the plaintiffs have failed to state an assault and battery claim against Sheriff Johnson and Deputy Sheriff Parker. Doc. 53 at 10–14. But as mentioned, the plaintiffs have not sued any individual defendants for assault and battery. The motion by Sheriff Johnson and Deputy Sheriff Parker as to this claim will be denied as unnecessary.

The City defendants contend that the assault claims against the as-yet-unidentified Graham police officers should be dismissed for failing to plead actionable facts sufficient to overcome public official immunity to state claim liability. Doc. 46 at 18. The attorneys for the City have asserted that they do not represent these defendants and have refused to accept service on their behalf. *See* Doc. 57 at 3 ("On December 14 and 15, 2020, counsel for the City of Graham Defendants . . . declined to accept or facilitate service of the Doe Defendants employed by their clients."). Because counsel may not move to dismiss claims against defendants they do not represent, the City's motion as to the unidentified Doe defendants will also be denied.

### B. The Claims under the North Carolina Constitution

The plaintiffs bring direct claims against the County and City defendants under the North Carolina Constitution for violations of their rights to freedom of speech and

13

freedom of assembly. Doc. 25 at ¶¶ 200–10. To assert a direct constitutional claim, "a plaintiff must allege that no adequate state remedy exists to provide relief from the injury." *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010); *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). "An adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the same injury alleged in the direct constitutional claim." *Estate of Fennell ex rel. Fennell v. Stephenson*, 137 N.C. App. 430, 437, 528 S.E.2d. 911, 915–16 (2000), *reversed in part on other grounds*, 354 N.C. 327, 554 S.E.2d 629 (2001).

The County and City defendants contend that the plaintiffs are precluded from bringing direct claims under the North Carolina Constitution because they have asserted federal § 1983 claims and state common law claims, which, if successful, would compensate the plaintiffs for their injuries. Doc. 46 at 12–13; Doc. 53 at 14–15. But they do not provide any cases supporting their contention that the plaintiffs' federal claims are an adequate state remedy for violations of distinct and independent state constitutional rights. *See* Doc. 4 at ¶ 1 (Standard Order reminding parties that "legal arguments require citation to legal authority"); *see also infra* note 12. Nor do they support their contention that the plaintiffs' common law claims for assault and battery are an adequate remedy for free speech and assembly injuries, and North Carolina courts have ruled that no state remedy exists for the violation of the state constitutional right to freedom of speech. *Corum*, 330 N.C. at 783, 413 S.E.2d at 290 ("Having no other remedy, our common law guarantees plaintiff a direct action under the State Constitution

14

for alleged violations of his constitutional freedom of speech rights."); *see also Randleman v. Johnson*, 162 F. Supp. 3d 482, 489–90 (M.D.N.C. 2016) (rejecting an unsupported argument that the mere assertion of another state law claim precludes direct action under the state constitution).

The County and City defendants have not shown that the plaintiffs are precluded from advancing direct claims under the North Carolina Constitution. Both motions will be denied as to the state constitutional claims.

### C. The Voting Rights Act Claim

The plaintiffs bring a cause of action under § 11(b) of the Voting Rights Act, which is codified at 52 U.S.C. § 10307. *See Pa. Democratic Party v. Republican Party of Pa.*, No. 16-5664, 2016 WL 6582659, at *4 (E.D. Pa. Nov. 7, 2016). The statute prohibits conduct that "intimidate[s]," "threaten[s]," or "coerce[s]" someone who is "voting, "attempting to vote," or "urging or aiding any person to vote or attempt to vote." 52 U.S.C. § 10307(b). Multiple courts have found that the statute extends to private conduct and establishes a private cause of action. *Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 Civ. 8668 (VM), 2021 WL 480818, at *5 (S.D.N.Y. Jan. 12, 2021) (collecting cases); *see also League of United Latin Am. Citizens – Richmond Region Council 4614 (LULAC) v. Pub. Interest Legal Found.*, No. 1:18-cv-00423, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018) (holding that the statute reaches private conduct).

The plaintiffs allege that the County and City defendants used physical force and pepper spray to intimidate and prevent the plaintiffs from voting during a peaceful march

15

to the polls, one block from where they intended to register to vote and cast ballots on the final day of early voting in North Carolina. Doc. 25 at ¶¶ 99, 116, 124, 131, 133, 144, 151–53, 155–56, 162, 186. The plaintiffs also allege that many of them felt threatened and intimidated by this unnecessary and excessive force, which halted the march to the polls and deterred many plaintiffs from voting in the 2020 election. *See, e.g.*, *id.* at ¶¶ 1, 3, 5, 106, 114–116, 119, 123–27, 133, 144, 151–56, 162, 185–87. The use of physical violence and pepper spray to deter an individual from voting or engaging in voting-related activity states a plausible § 11(b) claim. *See Katzenbach v. Original Knights of Ku Klux Klan*, 250 F. Supp. 330, 341 (E.D. La. 1965) (citing violence against individuals "participating in a march . . . to protest denial of equal rights" as actionable voter intimidation under § 11(b)'s predecessor statute).

     The County defendants contend that the plaintiffs have not alleged that the defendants' actions were acts of intimidation or attempts to intimidate within the meaning of the statute. Doc. 53 at 18. There is limited case law discussing what "threaten" and "intimidate" mean in the context of § 11(b), but at least one court has held that alleged conduct that "put[s] [an individual] in fear of harassment and interfere[s] with their right to vote" is "intimidation sufficient to support [a] § 11(b) claim." *LULAC*, 2018 WL 3848404 at *4. Other courts addressing § 11(b) and similar language in other voting-rights statutes have gone so far as to find that even nonviolent actions can constitute impermissible threats, intimidation, or coercion. *See Nat'l Coal. on Black Civic Participation*, 2021 WL 480818 at *5 (collecting cases). This argument is better addressed on a more developed factual record.

16

The City defendants contend that the plaintiffs must allege facts supporting an inference that voting rights were denied based on race or color. Doc. 46 at 6. The one case they cite, *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 647–48 (E.D. Pa. 2018), does not so hold. The *Acosta* court construed the complaint as arising under § 2 of the VRA, *id.* at 647, not § 11(b), and nothing in § 11(b) mentions race or color. And while the *Acosta* court noted that the plaintiffs did not allege they were denied the right to vote based on race or color, that was simply an example of the dearth of factual allegations in the complaint. The *Acosta* court made it clear that the claim was dismissed because the plaintiffs made only a passing reference to the Voting Rights Act and did not include any factual allegations to support the claim. *Id.* This argument is without merit.

The City defendants also contend that the plaintiffs do not allege that they were voting or attempting to vote at the time of the pepper-spraying and that an allegation of misconduct unrelated to voting, but which thereafter has an adverse effect on voting, cannot support a VRA claim. Doc. 46 at 6–7. But the plaintiffs allege that at least some members of their group were on their way to vote. Doc. 25 at ¶¶ 14, 25–26, 144, 152–53, 155. And in any event, the language of the statute does not support the City's argument, as it specifically protects "urging" others to vote or attempt to vote. 52 U.S.C. § 10307(b). Even the case cited by the City defendants does not directly support their argument, and there are many cases holding that § 11(b) protects not just voting but voting-related conduct, which includes encouraging others to vote or helping register other voters. *See, e.g.*, *National Coal. On Black Civic Participation*, 2020 WL 6305325 at *12; *LULAC*, 2018 WL 3848404 at *4.

17

The County and City defendants both contend that the plaintiffs did not allege that the defendants viewed or treated the March as a voting activity and therefore that the defendant officials did not have the subjective intent to, or purpose of, interfering with the right to vote. Doc. 46 at 7; Doc. 53 at 18. First, neither group of defendants cite any cases supporting their contention that subjective intent to interfere is an element of this claim, and the statute itself does not directly mention intent.[11] The Court need not do the legal research on this question if the defendants did not think it worth their time. *See Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015). Even assuming this is an element, the plaintiffs allege that the March was specifically identified as a "March to the Polls," and the complaint details the plaintiffs' efforts in planning the March weeks in advance, including by applying for a permit from the County officials and by providing details to both the County and City officials about where, when, and how the plaintiffs planned to proceed with the March. Doc. 25 at 67–83. It is a plausible inference at this stage that the defendants knew one of the purposes of the March was to support voting. The causation or intent aspects of the cause of action are better evaluated on a factual record with more developed legal argument.

The County and City motions will be denied as to the § 11(b) claim.

### D. The 42 U.S.C. § 1985(3) Claim

The plaintiffs bring a claim against the County and City defendants under 42 U.S.C. § 1985(3), the Ku Klux Klan Act of 1871. Doc. 25 at ¶¶ 189–99. Section 1985(3)

---

[11] At least one court has held that § 11(b) does not include a specific intent or racial animus element. *See LULAC*, 2018 WL 3848404 at *3–4.

18

creates a private cause of action, in relevant part, "if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote" from voting. 42 U.S.C. § 1985(3).

The County defendants contend that dismissal is warranted because the plaintiffs have not alleged any facts to support their claim of a conspiracy or agreement. Doc. 53 at 19–20. This is not so. *See, e.g.*, Doc. 25 at ¶ 31 (alleging a consultant gave orders and assigned duties to both City and County law enforcement officers), ¶ 123 (alleging City and County officers worked in coordination in shouting at marchers to disperse), ¶ 154 (alleging named City and County actors planned and approved violent crowd-control tactics used by City and County officers). Drawing all reasonable inferences in the plaintiffs' favor, the complaint states a plausible claim.[12] The motion to dismiss this claim will be denied.

### E. The § 1983 Claims

#### 1. The City of Graham's Municipal Liability

The City defendants contend that the plaintiffs have failed to allege facts sufficient to establish municipal liability for their federal constitutional claims under § 1983. Doc. 46 at 7–12. It is well established that a municipality may be liable under § 1983 if a municipal policymaker approves or ratifies unconstitutional acts. *Monell v. Dep't of Soc.*

---

[12] The City defendants offer no substantive argument about this claim, referencing it only in a conclusory footnote. Doc. 46 at 12 n.7. The Local Rules explicitly state that an argument must be supported by citation to the record and legal authority. *See* LR 7.2(a). An argument is waived where the party fails to cite "legal authority of any kind." *Hayes v. Self-Help Credit Union*, No. 13-cv-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014).

19

*Servs.*, 436 U.S. 658, 690 (1978); *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The plaintiffs have adequately alleged that Chief Cole had final policymaking authority and exercised it to deprive them of their constitutional rights. Doc. 25 at ¶¶ 35–36. The motion to dismiss the federal constitutional claims against the City on this basis will be denied.

To the extent that the City defendants contend that Chief Cole did not have actual authority to ratify the use of pepper spray as a municipal policymaker, or that she did not ratify the use or pepper spray at all, that factual argument is premature. Whether an official possesses final authority to establish or ratify municipal policy is a fact-intensive inquiry usually inappropriate for resolution on a motion to dismiss. *See, e.g.*, *Hunter v. Town of Mocksville*, 897 F.3d 538, 556–57 (4th Cir. 2018) (assessing final policy maker authority on developed factual record); *Davidson v. Loudoun Cnty. Bd. of Supervisors*, No. 16-cv-932 (JCC/IDD), 2016 WL 4801617, at *6 (E.D. Va. Sept. 14, 2016) ("Whether ratification has taken place is an issue of fact.").

### 2. The First Amendment Claim Against the County Defendants

The County defendants assert that the facts alleged show that the plaintiffs' First Amendment claim cannot succeed. Doc. 53 at 15–16; *see* Doc. 25 at ¶¶ 175–78. But the County defendants rely on a selective recitation of only some of the facts alleged and ignore allegations that disrupt their narrative. The plaintiffs allege that the demonstration was peaceful and that the defendants used force to prevent the plaintiffs from protesting. The defendants' factual assertion that their acts were needed to "stop[] an unlawful

20

assembly" and to "clear[] the streets," Doc. 53 at 16, are more appropriately raised at summary judgment.[13]

### 3. The Fourth Amendment Claim Against the County Defendants

The County defendants move to dismiss the plaintiffs' Fourth Amendment claim pursuant to Rule 12(b)(6). Doc. 53 at 17. Their argument on this issue amounts to a one sentence "request" that the Court "find that Plaintiffs have failed to state a claim." *Id.* The County defendants' motion on this issue will be denied. *See Landress v. Tier One Solar, LLC*, 243 F. Supp. 3d 633, 639 n.7 (M.D.N.C. 2017) (noting that where a party fails to develop an issue in its brief, courts have deemed the issue waived and citing *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012)).

### 4. Qualified Immunity

Some of the defendants raise a qualified immunity defense to the claims brought against them in their individual capacities. Specifically, the City defendants assert qualified immunity for Lt. Velez, Chief Cole, and Officer Franks, Doc. 46 at 13–17,

---

[13]In the complaint, the plaintiffs allege that the defendants' actions were unreasonable time, place, or manner restrictions on First Amendment activity, Doc. 25 ¶ 168, and the defendants discussed that legal standard in their brief. Doc. 53 at 16; *see Perry Educ. Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37, 45 (1983) (explaining the government's power to enact speech restrictions on various categories of government-owned property). The plaintiffs also alleged that the defendants' actions were not justified by a compelling or substantial government interest, Doc. 25 ¶ 168, but in their briefing, they frame the claim more as an incitement of lawlessness issue by citing the "clear and present danger" standard. *See* Doc. 62 at 11 (citing *Jones v. Parmley*, 465 F.3d 46, 57 (2d Cir. 2006)). As part of the pretrial conference, and certainly before summary judgment briefing, the parties may want to clear up the nature of this claim and the appropriate First Amendment standard so that the briefing is more helpful.

21

while the County defendants claim immunity in a conclusory fashion for seemingly all defendants. Doc. 53 at 20–21.

Qualified immunity bars § 1983 actions against government officials in their individual capacities "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Barrett v. Pae Gov't Servs.*, 975 F.3d 416, 428–29 (4th Cir. 2020) (citation omitted). Qualified immunity is, as the City defendants acknowledge, a highly fact-specific inquiry, Doc. 46 at 16, and ordinarily "should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). Dismissal on grounds of qualified immunity is inappropriate where its resolution "turn[s] on disputed facts." *Raub v. Bowe*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013).

As an affirmative defense, the defendants bear the burden of establishing qualified immunity. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006). In their briefing, the defendants focus only on the first qualified immunity prong of whether the named defendants violated a federal statutory or constitutional right; neither set of defendants contends at this point that the federal rights at issue are not well-established. *See* Doc. 46 at 13–17; Doc. 53 at 20–21.[14] Because the Court has already decided not to dismiss any of the federal claims against the defendants in their individual

_____

[14] The County defendants do assert that "[p]laintiff has alleged no conduct on the part of the Defendants which deprived Plaintiff of a constitutional right that was clearly established at the time of their actions," Doc. 53 at 21, but they do not identify the constitutional right allegedly at issue.

22

capacities for failure to state a claim, *see supra*, the defendants have not satisfied the first qualified immunity element. The plaintiffs have plausibly and specifically alleged that the individual City and County defendants responded to their lawful and peaceful march, either directly or in a supervisory capacity,[15] with excessive physical force and pepper spray,[16] and that this response violated the plaintiffs' clearly established constitutional rights. Dismissal on qualified immunity grounds without a more fully developed factual record would be inappropriate.[17]

### F. Punitive Damages Against the County Defendants

---

[15] Supervisors may be held liable under § 1983 if they "failed or refused to intervene when a constitutional violation took place in [their] presence . . . ." *B.J.G. ex rel. McCray v. St. Charles Cnty. Sheriff*, No. 4:08-cv-1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010), *aff'd sub nom. B.J.G. ex rel. McCray v. St. Charles Cnty. Sheriff*, 400 F. App'x 127 (8th. Cir. 2010); *see also Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 464 (M.D.N.C. 2016) (noting that supervisory liability under Section 1983 lies for affirmatively approving unconstitutional conduct).

[16] *See, e.g.*, Chief Mary Kristine Cole, Doc. 25 at ¶¶ 5, 38–39, 119, 154, 157; Officer Jonathan Franks, *id*. at ¶¶ 5, 31, 154; Sheriff Terry Johnson, *id*. at ¶¶ 27–28, 116, 123, 154, 172, 195–96; Deputy Sheriff Cliff Parker, *id*. at ¶¶ 29–30, 116, 154, 172 195; Lt. Joaquin Velez, *id*. at ¶¶ 5, 40–42, 154, 196.

[17] Courts in this circuit have previously denied qualified immunity to law enforcement acting in retaliation to protected First Amendment activity. *See Jordan v. Large*, No. 7:16-cv-00468, 2018 WL 1158422, *4–5 (W.D. Va. Mar. 5, 2018) (finding allegations that officer used force in response to protected speech sufficient to state claim for First Amendment retaliation); *Raub*, 960 F. Supp. 3d at 614 (denying motion to dismiss because officer arrested plaintiff because of his political views); *Lowe v. Spears*, No. 3:06-cv-0647, 2007 WL 9718279, at *5 (S.D.W. Va. May 4, 2007) (denying motion to dismiss where officer retaliated at least in part because of plaintiff's protected speech). Courts in this circuit have also previously denied qualified immunity at the Rule 12 stage in cases where officers were alleged to have used pepper spray on nonviolent persons. *See, e.g.*, *Cooper v. Nichols*, No. 1:17-cv-1466 (AJT/TCB), 2019 WL 418856, at *4 (E.D. Va. Feb. 1, 2019) (denying a motion to dismiss based on qualified immunity by an officer who allegedly used OC spray on peaceful inmate).

23

The County defendants contend that the plaintiffs have not alleged the degree of aggravated conduct necessary to warrant punitive damages and that the claim for punitive damages should be dismissed. Doc. 53 at 21. An award of punitive damages is an intensely fact-bound determination, and federal courts regularly decline to address the availability of that remedy in response to a Rule 12 motion. *See, e.g.*, *Davis v. G. Allen Equip. Corp*., No. 4:20-CV-49-BO, 2020 WL 4451169, at \*2 (E.D.N.C. Aug. 3, 2020) (holding that a request for punitive damages is not "a separate cause of action" and therefore "dismissal is not warranted"); *Taylor v. Bettis*, 976 F. Supp. 2d 721, 747 (E.D.N.C. 2013) ("[I]t is premature to foreclose the possibility of punitive damages at this time."); *Jones v. Wake Cnty. Hosp. Sys.*, 786 F. Supp. 538, 547 (E.D.N.C. 1991) (declining to rule on punitive damages issue on a 12(b)(6) motion). Given the allegations in the complaint concerning the use of excessive force, physical assault by pepper spray, and other allegedly unjustified acts to break up a peaceful and otherwise lawful exercise of First Amendment rights, dismissal of the plaintiffs' request for punitive damages is inappropriate. The County defendants' motion as to this issue will be denied.

## VII.    Conclusion

The plaintiffs have adequately alleged each of their claims against the City and County defendants. Both motions will be denied, except as to the redundant §1983 claims against the individual City defendants in their official capacities, which will be dismissed.

It is **ORDERED** that:

24

1. The City defendants' motion for leave to exceed word limitation, Doc. 47, is **GRANTED**.

2. The City defendants' motion to dismiss, Doc. 45, is **GRANTED in part** and the § 1983 claims against Chief Cole, Lt. Velez, and Officer Franks in their official capacities for violating the plaintiffs' First and Fourth Amendment rights, Doc. 25 at ¶¶ 175–82, are **DISMISSED**. The § 1983 claims against all other defendants will proceed, and the City defendants' motion to dismiss is otherwise **DENIED** as to the *Drumwright* complaint. The City's motion is **HELD IN ABEYANCE** to the extent it is directed at the *Allen* complaint, Doc. 24.

3. The County defendants' motion for judgment on the pleadings, Doc. 52, is **DENIED**.

This the 2nd day of June, 2021.

_____
UNITED STATES DISTRICT JUDGE